## W. C. BOYD *v.* MISSISSIPPI HOME INSURANCE COMPANY.

1. INSURANCE. *Fire policies. Construction. Rules.*

There are two fundamental rules governing the construction of fire insurance policies. First, since they are usually prepared by the insurer, they are to be construed most strongly in favor of the assured. Second, such policies must always be construed with reference to the nature and kind of property insured, the uses to which, within the common knowledge of men, it is ordinarily put, and the custom of the country in dealing with it.

2. SAME. *Part written, part printed.*

The rule that the written part of an insurance policy prevails over the printed part, is applicable only where there is irreconcilable conflict between them.

3. SAME. *Ambiguous terms.*

When a party expresses his liability in terms having two meanings, one broader than the other, and each equally probable, he cannot, after an acceptance by the other contracting party, set up the narrower construction.

4. SAME. *Inconsistent stipulations.*

If a policy of fire insurance is prepared by the insurer, and contains inconsistent stipulations, the meaning most favorable to the insured will be adopted.

FROM the circuit court of Bolivar county.

HON. F. A. MONTGOMERY, Judge.

The facts are stated in the opinion.

*Sillers & Owen,* for appellant.

We contend that the clause in said policy which reads, "all while in the above-described ginhouse building," must be construed to cover cotton ginned and unginned, baled and unbaled, while in such ginhouse building. A fire insurance policy will

be most strongly construed against the insurer.    23 Am. St. Rep., 905.    In *Strauss* v. *Am. Ins. Co.*, 4 Am. St. Rep., 368, the court says: "When one clause stands with others, its sense may be gathered from those which immediately precede and follow it."

The preceding clause showing the building in which the property is situated, and the clause showing the character of the property burned to be cotton, ginned and unginned, baled and unbaled, and the clause covering "all while in the above-described ginhouse building," is, to our mind, conclusive that the intention of the parties was to cover, not only the cotton in the cotton house, but also the cotton after it was removed. to and while in the ginhouse building.    In *DeGraf* v. *Ins. Co.*, 8 Am. St. Rep., 685, the court says: "The language of condition in an insurance policy must be clear and unambiguous, and any reasonable doubt as to its meaning must be resolved in favor of the insured.    The terms employed must be construed with reference to the nature of the property insured, the purpose for which it is ordinarily used and the manner in which it is usually kept, so as to give the condition, if possible, a meaning reasonably applicable to the kind of insurance upon that particular species of property."

Viewing this case from every reasonable standpoint, the intention of the parties, as gathered from the wording of the policy and character of the property, appears to have been to cover the property while in the ginhouse.

*Chas. Scott* and *E. H. Woods*, for appellee.

The written words, "in cotton house adjacent to gin," will govern the printed form, even if the case was much stronger than the one at bar.    Can the court ignore these written words, fixing definitely the location of the property covered by the policy of insurance?    It is well known that insurance companies fix the rate of insurance according to the location of the property, some risks being much more hazardous than others.

This is the case especially in risks such as that now under discussion, the rate being much higher on property situate in a ginhouse than it is on property " in the cotton house adjacent to the gin," and we submit that, in an agricultural state like Mississippi, this rule is so universal that the court would have judicial knowledge thereof. Whether this be true or not, we again ask if the court can properly ignore the written words above mentioned? If they do not plainly state in letter and in spirit that the insured property consists of cotton " in the cotton house adjacent to the gin," then our language fails to offer any terms which would have enabled the draughtsman of the contract to fix the environment of the insured property.

WHITFIELD, J., delivered the opinion of the court.

Boyd was insured against loss by fire on cotton seed to the extent of $100, and on cotton to the extent of $400. The particular part of the policy brought under review is pasted in the face of the policy, and denominated, " Form for ginhouses and contents;" and the controversy is as to whether the policy covered the property, it being destroyed while in the ginhouse building. The property so destroyed consisted of twenty-three tons of cotton seed, of the value of $184.13; thirteen bales of lint cotton, of the value of $600; one bale of unbaled lint cotton, of the value of $50; and one bale of unginned seed cotton, of the value of $50—the total value of $934. It will thus be seen that cotton seed, unginned cotton and ginned cotton, baled and unbaled, were destroyed. The ginhouse building was "a two-story frame, steam-power, ginhouse building, with wood roof," and was not itself insured. The "form" referred to contained separate specifications for the building and a variety of contents. The only " contents " insured in this policy were cotton seed, in one specification, and " cotton, ginned and unginned, baled and unbaled," in another specification, at the end of which specification follow the words, in writing, " in cotton house adjacent to gin." The additional

words do not follow the specification as to the cotton seed. Cotton seed to the value of $100 was insured, and cotton of the kind described to the value of $400. Just after the last specification, "cotton, ginned or unginned," etc., "in cotton house adjacent to gin," follows, in print, a blank for total dollars in value of the things insured, and the words, in print, "all while contained in the above-described ginhouse building." There then follows a prohibition against the use of artificial light, or the operating of the machinery at night, without indorsed permit, and against smoking "in or about the building;" meaning, of course, the "steam-power ginhouse building." When destroyed, the property was in the ginhouse building, and the contention is that the policy does not cover the property while contained in the ginhouse building. It is obvious that the construction is technical, to the last degree, in favor of the insurer, and is wholly untenable.

There are two fundamental rules governing the construction of fire insurance policies: First, since these policies are usually prepared by the insurer, the construction is to be made most strongly against the insurer in favor of the assured. Second, such policies must always be construed with reference to the nature and kind of property insured, the uses to which it is ordinarily, within the common knowledge of men, put, and the custom of the country in dealing with it, and the parties to such contracts must be held to have all this in view in making the contract. These propositions are most abundantly supported by the highest authority, and are now thoroughly settled. See, especially, *Noyes* v. *Insurance Co.*, 64 Wis., 415, where the authorities are elaborately collated and discussed. Where a sealskin dolman was insured "while contained in a dwelling house," but was burned at a furrier's, though the risk was greater there, the insurer was held liable. Case *supra*. Where the policy insured "seven horses . . . situated section 22," etc., and they were burned up at an hotel not on section 22; where a policy insured live stock on premises situated on

sections 7 and 12, and a horse was killed six miles distant from the place; where a policy insured a phaeton "contained in a barn," and the vehicle was destroyed while in a carriage shop, while undergoing repairs; where a policy insured "family wearing apparel contained in two-story frame building on lot 6," etc., and the apparel was burned while the owner was riding in a sleigh; where the policy insured a threshing machine "stored in barn on section 36, T. 23, R. 28," etc., and the machine was burned while standing in a field on that section; and where the policy insured mules as being all contained in a certain barn, and while such barn was being repaired the mules were removed to another barn. on same section, where they were burned up—in all these cases the insurers were held liable. *Peterson* v. *Insurance Co.*, 24 Iowa, 494; *Mills* v. *Insurance Co.*, 37 Iowa, 400; *McCluer* v. *Insurance Co.*, 43 Iowa, 349; *Longueville* v. *Assurance Co.*, 51 Iowa, 553; *Everett* v. *Insurance Co.*, 21 Minn., 76; *Holbrook* v. *Insurance Co.*, 25 Minn., 229; *Langworthy* v. *Insurance Co.*, 85 N. Y., 632; *Degraff* v. *Insurance Co.*, 8 Am. St. Rep., 685 (a very instructive case, directly in point); 11 Am. & Eng. Enc. L., p. 289, and note 2, title, "Location."

The principle of these cases is obvious. Wearing apparel is to be worn on the person, and phaetons are to be ridden in, and mules are to be used in the cultivation of crops, and threshing machines are to be taken to the fields where threshing is to be done, and, though policies may refer to them as in, or contained in, particular houses, the insurers necessarily know— what all men commonly know—that such uses will be made of them, and are liable, though they be destroyed elsewhere, if they are put to such customary use only. So, here, "the cotton house adjacent to the gin" was manifestly a cotton house used to hold seed cotton, not ginned cotton or cotton seed, or ginned cotton baled. Lint cotton is not usually mixed with seed cotton or cotton seed or baled cotton. The seed cotton, after being ginned, would not usually be put back with cotton in the

seed. This policy is an open one, covering any cotton seed during its life, from the first of October, 1895, to the first of October, 1896, to the amount of $100, and any cotton, ginned and unginned, baled and unbaled, to the amount of $400. The contemplation was, necessarily, that the farmer would gin up the particular quantity of cotton in the cotton house, resulting in lint and seed, and bale the lint, and fill the cotton house again. The risk insured against, manifestly, was the danger of fire from the steam-power gin, resulting from friction, etc.— a well-known danger in a cotton-farming community. It is just as illogical to suppose that the parties to this contract intended the particular lot of cotton in the seed to remain in the cotton house, and to be covered by the policy only if it remained there, as it would have been to suppose that, in the cases cited, the phaeton or wearing apparel or live stock were so to remain at the place in which they were when insured.

In all these cases, the statement that the property is in, or contained in, a particular house, is not a promissory stipulation or warranty that the property will remain there at all times during the life of the policy, but is used merely to identify the particular property insured. Nor do we think appellee is aided by a sound technical construction, even. That construction would not take the clauses of this policy separately, disconnected from each other, but, according to the established canon of construction, together, and, so taken, construe the whole policy so as, if reasonably it can be done, to uphold it and prevent a forfeiture. So read, the policy reads, literally: "$400 on cotton, ginned and unginned, baled and unbaled, in cotton house adjacent to gin, all while contained in the above-described ginhouse building;" that is, the cotton that was, when the policy was written, and that might, from time to time, within its life, be put in the cotton house adjacent to the gin, while contained in the ginhouse building, in its ordinary use while being converted into seed and lint and baled cotton. It

will be noted that the cotton seed, on any construction, is in the ginhouse building.

The argument that the words, "in the cotton house adjacent to the gin," because in writing, control the words following, "all while contained in the above-described ginhouse building," invokes a well-known rule, but one applicable only where there is irreconcilable conflict between a printed and a written clause. There is no such necessary conflict between the clauses here. They are perfectly harmonious, when construed with reference to the nature of the property and its ordinary uses in preparation for market. In *Ins. Co.* v. *Hazelet*, one clause worked absolute forfeiture upon a certain contingency, but another secured, upon the same contingency, "a surrender value." The court said (105 Ind., at page 216): "When a party uses an expression of his liability having two meanings, one broader and one more narrow, and each equally probable, he cannot, after an acceptance by the other contracting party, set up the narrow construction. The policy before us having been presumably prepared by the company, and containing on its face inconsistent and ambiguous stipulations as to the consequences, the meaning most favorable to the assured must be attributed to it. To hold otherwise would be to give a construction to the contract which would enable the insurance company to exercise its option, after having collected premiums, to insist upon a forfeiture or not, according to its pleasure." In the case at bar the only "probable" meaning is the one we have put upon the terms of the policy. But the principle announced in the case cited shows that, were the clauses ambiguous, the construction should be still in favor of the assured. On either view, indisputably, the appellee is liable for the $500.

*The judgment is reversed, the demurrer overruled and the cause remanded.*

CALHOON, Special J., presided in place of STOCKDALE, J., absent on account of sickness.