### Georgia Life Ins. Co. *v.* Mississippi Cent. R. Co.

[76 South. 646, In Banc]

Insurance. *Indemnity policy. Offer and acceptance. Increased recovery.*

Where a policy of insurance indemnifying a railroad company against liability for personal injury suits, provided that the insurer would, at its own costs, investigate all accidents and defend all suits, and that when the insurer had the opportunity to settle the claim of any injured employee and failed to take advantage thereof it should become liable to an increased amount, provided that the offer of settlement was submitted to the insurer by the injured employee or his duly authorized representative, and an employee of insured was killed, and suit was brought against it by the administrator and also by the widow by his next friend and the widow made an offer of compromise to the railroad company, which was by it communicated to the insurer, but no offer was made by the administrator, or by the next fried, and recovery was had against the railroad company in an amount larger than that covered by the policy. In such case the offer of compromise not having been made by the duly authorized representative of the deceased employee, the insurer was powerless to accept it, was not liable to the insured in the increased amount over the face of the policy.

Appeal from the chancery court of Adams county.
Hon. R. W. Cutrer, Chancellor.

Suit by the Mississippi Central Railroad Company against the Georgia Life Insurance Company. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

Ethridge, J., delivered the opinion of the court.

This is an appeal from the chancery court of Adams county, from a judgment against the appellant in favor of the appellee for five thousand dollars, on a policy issued by the Great Southern Accident & Fidelity Company, to the Mississippi Central Railroad Company, which policy was assumed by the Georgia Life Insurance Company.

The policy covered a period from the 11th day of November, 1911, to the 11th day of November, 1912. By his policy the insurance company, hereafter called the "company," agreed to indemnify the assured railroad company against loss for damages within the amounts named in the policy, on account of bodily injuries or death accidentally suffered by any employee of the assured while engaged in the occupations called for by the policy. Clauses B, C, D, and H of the policy are involved in this litigation, and reads as follows:

"B. Subject to the above conditions the company's liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to one person is limited to five thousand dollars ($5,000), and, subject to the same limit for each person, the company's total liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to more than one person is limited to ten thousand dollars ($10,000).

"C. In addition to these limits, however, the company will at its own cost (court costs and attorney's fees being considered part thereof) investigate all accidents and defend all suits, even if groundless, of which notices are given to it as hereinafter required, unless the company shall elect to settle the same, or to pay over to the assured the limits provided for in the preceding paragraph, provided that if the company elects to pay the assured the limit provided for, such

payment must be made before the return day of the suit.

"D. It is further agreed and understood that when the company has the opportunity to settle the claim of any injured employee within the limit designated in this policy, viz. five thousand dollars ($5.000), and fails to take advantage of such opportunity for settlement wihin the time provided in the preceding paragraph, the company shall thereafter protect the assured from any judgment not in excess of ten thousand dollars ($10,000), which may be rendered in favor of the injured employee. But this stipulation is of no effect, unless the opportunity of compromimse as herein mentioned is submitted to the company by the injured employee, or his duly authorized representative, within the period mentioned in the preceeding paragraph."

"H. The company is not responsible for any settlement made, or any expense incurred by the assured, unless such settlements or expenditures are first specifically authorized in writing by the company, provided the assured at the time of the accident has the right to provide necessary medical or surgical assistance for immediate relief and to provide means for the immediate comfort of the party or parties injured."

J. M. Winslow, an employee of the assured, engaged in an occupation covered by the policy, and in the service of the assured, was killed on the 14th day of August, 1912; said Winslow being a brakeman, and leaving as his only heirs a widow and a posthumous child. Two suits were filed against the assured, the appellee, in the circuit court of Lincoln county during September, 1912; one suit being filed by D. M. Higdon, administrator of the deceased, under the federal law; and the other by Mrs. Arcola Winslow, the widow, who also was a minor, by D. M. Higdon as next friend, under the state law. The first named of said suits was tried on the merits, in the month of January, 1913, and resulted in a judgment against the assured for twenty-

five thousand dollars. The other suit was dismissed.
An appeal was prosecuted from the judgment for
twenty-five thousand dollars, but was afterwards compro-
mised for ten thousand dollars; the appellee contribut-
ing seven thousand dollars, and the appellant three
thousand dollars, of the said amount of ten thousand
dollars. The appellee contended, at the time of settle-
ment, that the appellant was liable under the policy to
the extent of ten thousand dollars, under clauses B and
D, and the appellant insisted that it was only liable to
the extent of five thousand dollars under clause B of
the policy, and declined to pay the same without a full
release. In this situation of the matter the settlement
was effected, the appellee surrendering two thousand
dollars of the admitted liability in order to leave open
appellants liability for the other five thousand dollars
under said clause D of the policy; and this suit was
entered for the five thousand dollars under clause D, and
does not involve the primary liability of five thousand
dollars under the other clauses of the policy.

When the suits were brought in the circuit court, the
administrator of the deceased and the widow, by herself
and her father as next friend, entered into a contract
with H. V. Wall, an attorney, in which contract Wall
was assigned a one-half interest in the litigation, which
contract was filed as required by the statute with the
papers in the cause.

After the filing of these suits, and on or about the
26th day of October, 1912, shortly before the birth of
the child, Mrs. Winslow, the mother of the deceased, wrote
the assured, the railroad company, as follows:

"I have had a talk with my daughter-in-law, and she
says she is willing to accept the compromise you stated
to me, if you cannot make this sum larger. Now, if
possible, please fix this for her regardless of her father
and lawyer. See what can be done as soon as possible,
as she is in need of the money."

Thereupon the claim attorney of the railroad company, the assured, wrote the insurance company as follows:

"Under the terms of our liability contract with your company, you are hereby formally notified that the above-styled causes, both growing out of the killing of Brakeman Winslow at Wanilla, Miss., August 14, 1912, can be settled for five thousand dollars."

The general attorneys of the insurance company replied to this letter under date of October 3, 1912, as follows:

"We have your favor of the 28th inst., advising us that the case of D. M. Higdon, administrator, and Mrs. Arcola Winslow, against the Mississippi Central Railroad Company, can be settled for five thousand dollars. We are unwilling to make this offer."

It is the contention of appellee that, under the terms of the contract of insurance, this constituted an offer of compromise which must be accepted by the insurance company, or else that the insurance company would be liable for all under ten thousand dollars that might be recovered against the railroad company. If the proposition had been made to the insurance company by the legal representatives of the deceased, or if it had been made by such representatives or attorney of such representatives to the railroad company and transmitted to the insurance company there would have been merit in this contention and if such had been the case the judgment of the chancery court would be upheld. But we are dealing with the completed case, with all matters that the record shows in connection therewith, and from the whole record it appears that there was no such offer of compromise in fact made, and that if the insurance company had undertaken to settle for the five thousand dollars it could not have done so.

The concluding clause of paragraph D, bearing on the compromise proposition, to wit, "but this stipulation is of no effect, unless the opportunity of compro-

mise as herein mentioned is submitted to the company
by the injured employee, or his duly authorized repre-
sentative, within the period mentioned in the preceding
paragraph,'' was evidently put in the contract to pre-
vent just such judgments as was rendered here. The
proposition of compromise, under the terms of the
policy, is to be submitted to the insurance company by
the injured employee or his duly authorized representa-
tive within the period mentioned. The evident purpose
and intention of this contract, requiring the acceptance
of a proposition made in good faith, was that it should
be tendered in such manner that the insurance company
could accept it.

The railroad company did not abandon its efforts to
compromise the litigation against it referred to above,
but continued its efforts to bring about a settlement, and
all the circumstances following must be taken into con-
sideration. It is manifest from the letters of the rail-
road company to the insurance company that neither
Mr. Higdon, the administrator, nor Mr. Wall, the at-
torney (having a half-interest in the matter), had been
consulted about a compromise, and it plainly appears
from the correspondence that the railroad company
knew that Mr. Higdon and Mr. Wall would not consent
to a compromise, and no proposition had ever been ob-
tained from them justifying an assumption that a com-
promise could be effected. On October 31, 1912, the
claim agent of the assured wrote the insurance com-
pany as follows:

''Mrs. Arcola Winslow, widow of R. M. Winslow,
deceased, a former employee who was killed at Wanilla,
and for whose death two suits for damages are now
pending in Brookhaven, Miss., has agreed to accept
five thousand dollars in settlement for herself and her
child which was born a few days ago. Her father, who
is the administrator, and her attorneys know nothing
of this proposition of settlement, and, no doubt, would
oppose it if they heard of it.''

Inasmuch as the administrator and the attorney were necessary parties to make a binding settlement of this litigation, it is manifest at that time there could be no settlement, and the insurance company was under no obligation to send out representatives to run down the possible compromise.

Afterwards the agent of the assured saw one of the attorneys who had been retained by Mr. Wall to assist in the trial of the cause, and represented to such attorney that a settlement could be made but for the fact that the attorney, Mr. Cassidy, stood in the way. Mr. Cassidy replied in substance that he had never stood in the way of any settlement, and, while he would not recommend a settlement on this basis, he would not oppose it if Mrs. Winslow desired to settle for said amount.

Thereafter, about the 7th of December, the claim attorney of the assured called upon the widow and secured a letter, as follows:

"I want, if possible, to arrange a settlement of my case against your company wihout further trouble or litigation. I am willing to compromise for five thousand dollars and should like to hear from you at your earliest convenience."

The attorney for the railroad company thereupon took up with the attorneys of the insurance company the proposition of settling for this amount, and was told that Mr. Wall had a half interest in the matter and that his consent and an order of court on behalf of the minors would be necessary to procure such a settlement. Mr. Wall, the assignee of the half interest, learning of this effort to compromise, wrote the assured's claim attorney as follows:

"My client, Mrs. Arcola Winslow, has just seen me relative to the claim she has against the Mississippi Central Railroad Company. I do not appreciate the method resorted to by the Mississippi Central Railroad Company, through its representatives in trying to per-

suade my client to settle her claim without consulting her attorney. In regard to a letter she was persuaded to write you, she authorizes me to say that the settlement, if any, must be made with me (H. V. Wall); I am the man who has the contract with her, and I am the one authorized to speak for her. She will not accept your proposition, nor neither will I accept it. The case will be set for trial Thursday, January 7, and we will expect you to be ready for trial. I always try to treat everybody fair, and expect fair treatment at the hands of other people, but in this case I have not received it. Fortunately, my client desires to take my advice instead of the advice of the Mississippi Central Railroad Company.''

The agent of the railroad company went to Atlanta and held a conference with the attorneys of the issurance company, in which conference the attitude of Mr. Wall was made known to the insurance company. It was also made known to the insurance company that Mr. Higdon would not consent to the settlement. It appears clearly from the testimony of Mr. Higdon, Mr. Wall, and Mr. Cassidy, that the settlement for five thousand dollars would not have been entertained by them. It is true that Mr. Cassidy testifies that if the client desired to settle he would not stand in the way, and Mr. Wall and Mr. Higdon admmitted that they might possibly have settled if Mr. Cassidy had advised them to do so as a lawyer. It is manifest from the whole testimony that Mr. Cassidy would not have advised settlement as a legal proposiion, and it would not have been entertained by Mr. Wall and Mr. Higdon after it was made. Mrs. Winslow and her child both being minors, it would have been necessary to procure a decree of the chancery court authorizing a settlement, and there is no pretense in the record that the matter was ever submitted to the chancery court or the chancellor, and no evidence that would warrant an assumption that it could have been compromised. The rail-

road company, the assured, had never procured an offer of compromise from any party having power to make it, and there was no offer made, either to the railroad company or the insurance company, by those competent to make such offer that would make it necessary for the insurance company to accept such compromise. We think the clause above quoted—the concluding clause of paragraph D of the contract—is a material and vital portion of the contract and must be given its proper meaning and effect as a part of the contract, and that giving it this effect precludes the appellee's recovery from the appellant, under the state of facts shown in this record. For the reasons indicated, the judgment of the learned chancery court is reversed, and judgment will be entered here for the appellant.

*Reversed, and judgment here.*

STEVENS, J. (dissenting).

There is no reversible error reflected by the record in this case, and the final decree appealed from should be affirmed. If there is any material conflict in the testimony, all doubts are removed and conflicts decided by the learned chancellor in favor of the appellee. Liability is properly imposed under paragraph D of the policy sued on and a breach thereof by the appellant Great Southern Accident & Fidelity Company. Clause D expressly provides as follows:

"It is further agreed and understood that when the company has the opportunity to settle the claim of any injured employee within the limit designated in this policy, viz. five thousand dollars ($5,000), and fails to take advantage of such opportunity for settlement within the time provided in the preceding paragraph, the company shall thereafter protect the assured from any judgment not in excess of ten thousand dollars ($10,-000), which may be rendered in favor of the injured employee. But this stipulation is of no effect, unless

the opportunity of compromise as herein mentioned is submitted to the company by the injured employee or his duly authorized representative, within the period mentioned in the preceding paragraph."

Under this provision of the contract, if the appellant, as the insurer, "fails to take advantage of such opportunity for settlement," its liability is increased from five thousand dollars to ten thousand dollars. The proof justified the chancellor in holding that this duty of appellant was not discharged. Now, what are the facts which justified the chancellor in imposing the additional liability under clause D?

Appellee is a railway company doing the usual business of a common carrier. Appellant entered into an indemnity contract whereby it agreed to insure appellee against damages resulting from the accidental injury or death of the railway employees. Mr. Winslow was killed, and there is no question about his being an employee, or about this claim being within the terms of the policy. Mr. Higdon was appointed as an administrator and sued appellee for damages. Mrs. Winslow, the widow, also filed suit under the state law. Immediately after the filing of these suits, appellee gave due notice to its insurer of the pendency of this litigation. It appears that at that time one Mr. Buescher was the claims attorney of the appellee railway company, and that he was also the legal representative of the appellant for the purpose of making an investigation of and reporting the facts of any accident embraced within the terms of the indemnity contract. It does appear that the widow of the deceased was at the time a minor, and the proof further shows that a posthumous child was one of the beneficiaries in the suit being prosecuted by the administrator. The widow, however, was a woman of mature years and had the natural right to make suggestions or to express wishes in regard to a settlement of the suit. She was sufficiently old to be

married and become the mother of a child. She and her mother-in-law, Mrs. J. M. Winslow, were very anxious to compromise the litigation and, with that end in view, voluntarily went to the general offices of appellee in the month of October, 1912, soon after the suits were filed, and had a general conversation with Mr. Smith, the general manager of the railroad company, and Mr. Buescher, the claims attorney for both appellant and appellee. The two Mrs. Winslows not only saw Mr. Smith in person, but called him over the telephone several times and discussed a proposed settlement. After one of these conversations, the widow, Mrs. Arcola Winslow, addressed the following letter to Mr. Smith:

"Brookhaven, Miss., October 24, 1912. Mr. R. K. Smith, Gen. Manager—Dear Sir: My mother-in-law is here and has influenced me to compromise with the M. C. R. R. Co. and would be pleased to do so if they will give me a satisfactory settlement. I know that I have a good suit against the Co. but I need the money, and would rather compromise with the Co. than to wait. But if I can't get what I think it worth or a real good compromise I will let things stand as they are. Would like very much to hear from you at once. Respectfully, Mrs. Arcola Winslow. 112 East Court Street, Brookhaven."

The elder Mrs. Winslow also saw Mr. Smith, who intimated to her that possibly a settlement of the cases could be effected on a basis of five thousand dollars. It appears that Mr. Smith made a tentative offer of five thousand dollars. Thereupon, Mrs. Arcola Winslow, the widow, joined her mother-in-law in the following letter to Mr. Smith:

"Brookhaven, Oct. 26th, 1912. Mr. R. K. Smith— Dear Sir: I have had a talk with my daughter-in-law and she says she is willing to accept the compromise you stated to me if you cannot make this sum larger.

Now, if possible please fix this for her regardless of her father or lawyer. See what can be done as soon as possible as she is in need of the money. Yours respectfully, Mrs. J. M. Winslow, Mrs. Arcola Winslow.''

It is conceded that the amount referred to in this letter is the amount of five thousand dollars theretofore discussed. At this time the contract of appellee was with the Great Southern Accident & Fidelity Company of Atlanta, Ga., whose liabilities were subsequently assumed by the appellant, Georgia Life Insurance Company. Mr. Buescher on October 28th, two days after the writing of the joint letter by the two Mrs. Winslows, addressed the following letter to the insurer:

''D. M. Higdon, Administrator, v. M. C. R. R. Co. Mrs. Arcola Winslow v. Miss. Central R. R. Great Southern Accident & Fidelity Company, Atlanta, Ga.— Gentlemen: Under the terms of our liability with your company, you are hereby formally notified that the above-styled cases, both growing out of the killing of Brakeman R. M. Winslow at Wanilla, Miss., August 14, 1912, can be settled for five thousand dollars. Please acknowledge receipt of this communication. Claim Attorney.''

The insurer then responded as follows:

''Mr. H. S. Buescher, Claims Attorney, Mississippi Central R. R. Hattiesburg, Miss.—Dear Sir: We have your favor of the 28th inst. advising us that the case of D. M. Higdon, administrator, and Mrs. Arcola Winslow against the Mississippi Central Railroad Company can be settled for five thousand dollars. We are unwilling to make this offer. Yours truly, Jones & Chambers.''

It will be noted that in this letter the general attorneys of the insurer stated unqualifiedly ''we are unwilling to make this offer.'' Again on December 7th the widow wrote Mr. Smith, the general manager, as follows:

"Hattiesburg, Miss., Dec. 7, 1912. Mr. R. K. Smith, Gen. Mgr. M. C. R. R.—Dear Sir: I want if possible to arrange a settlement of my case against your Co. without any further trouble or litigation. I am willing to compromise for five thousand dollars and should like to hear from you at your earliest convenience. Yours truly, Mrs. Arcola Winslow."

About the same time, also, Mr. J. W. Cassidy, one of the attorneys for the administrator, wrote Mr. Buescher as follows:

"In the Winslow case, on the first opportunity when you pass through Brookhaven please bring her letter with you, as I would like to take this matter up and if possible get it off the docket. As already explained to you, I want nothing more than enough to satisfy my client, and while I would not consent to a settlement for five thousad dollars yet if she wishes it I will not stand in the way of the company adjusting the matter. I don't want to mention this subject to Mrs. Winslow unless I know for certain what was in her letter. Let us hear from you at your earliest convenience, and oblige. Yours truly, J. W. Cassidy."

Mr. Buescher then, on December 9th, addressed another letter to the insurer as follows:

"We had another letter from Mrs. Arcola Winslow, asking that we hurry the final settlement of her case. She is willing to settle for five thousand dollars. You, of course, are familiar with the terms of your contract with us, which specifies that if your company fails to settle within the limits of the liability, where an opportunity has been given to do so, it will be held liable to the extent of ten thousand dollars in case judgment for that amount is rendered. This is a serious case and will undoubtedly result in a verdict of ten thousand dollars or more. Your company is, therefore, jeopardizing five thousand dollars by not settling now. I suggest that you give this matter your earnest consideration,

as the January term of court is fast approaching. Yours truly.''

At this time appellant Accident & Fidelity Company had retained the law firm of Jones & Tyler to represent its interests in this litigation. Jones & Tyler, in response to a telephone communication from Mr. Buescher, wrote a letter in which they stated, among other things, the following:

''We have your phone communication of this date advising us that these cases may be settled for five thousand dollars, Mrs. Winslow and her attorneys both agreeing to a settlement on this basis. We are writing our clients to this effect and recommending a settlement for this sum, our letter being addressed rather to Messrs. Jones & Chambers, the general attorneys.''

Judge Truly, the general counsel of appellee, also investigated the cases and attempted to interest appellant in a settlement. At the request of Judge Truly, Mr. Buescher, the claims attorney, took a special trip to Atlanta and ''laid the entire facts in the case before'' the Accident & Fidelity Company and their general attorneys. The only satisfaction he obtained on this trip was that ''Mr. Jones (general attorney) promised to let me know in a day or two what his company's decision would be.'' Buescher went to Atlanta December 11, 1912. On December 18th, Buescher wired the general attorneys at Atlanta as follows:

''What have you decided about Winslow matter. Delay may endanger compromise. Settlement should be arranged before Christmas if you intend making it.''

Mr Smith, the general manager, also wired appellant December 21st as follows:

''See attorney Buescher's telegram nineteenth to your attorneys, Jones & Chambers, Winslow case, and answer, please.''

No response whatever being made either to the communication of Mr. Buescher or of Mr. Smith, the latter again, on December 31st, wired:

"Please see my telegram twenty-first about Winslow case and answer, please."

Not getting a response to this telegram, Mr. Smith again wired January 2, 1913:

"Please let us have answer to our telegrams of December twenty-first and thirty-first about Winslow case." was the following response on January 2, 1913:

The only response then to any of these communications was the following response on January 2, 1913:

"Great Southern Accident & Fidelity Company Atlanta, Ga., Jan. 2, 1913. Mr. R. K. Smith, General Manager Mississippi Central Railroad Company, Hattiesburg, Miss.—Dear Sir: We are in receipt of your numerous telegrams in regard to the settlement of the Winslow case, and would advise that our attorneys have been out of town for the past ten days and we understand they are returning to-day, when this case will have attention and you will be advised. Yours very truly, W. J. Fagan."

The promise contained in this letter to give the matter attention was not complied with, and the proposed settlement was utterly ignored by appellant. During all this time Mrs. Wnslow, one of the beneficiaries, was still willing to settle the case. Judge Truly then testified that:

"In order to specifically call their attention to the fact that the proposition of compromise was still open, on January 4th I telegraphed to Hon. R. P. Jones, general counsel of insurance company, personally by Western Union Telegraph Company as follows: If possible, arrange to be at Brookhaven Tuesday the 7th when Winslow case will be tried. What have you decided about compromise proposition?' "

To this telegram Judge Truly did not even get the courtesy of a response. The cause came on for trial January 7th thereafter and resulted in a verdict of twenty-five thousand dollars for the plaintiff. The plaintiff was represented in the trial of this suit by Mr. H. V. Wall and Mr. J. W. Cassidy. A good while prior to the conven-

Oct. 1917] Insurance Co. *v.* Miss. Cent. R. Co. 129

116 Miss.] Opinion of the court.

ing of the court Mr. Cassidy was engaged in the trial of a case at Purvis, Miss., and there discussed with Judge Truly and Mr. Buescher a proposed settlement of this suit. Even during the trial of this case the five thousand dollar compromise settlement was discussed between counsel for the plaintiff and the defendant, and Mr. Cassidy, in response to Judge Truly's tentative offer, said:

"Why, Judge, there is no use talking about it until somebody has given authority to talk. If your company will pay five thousand dollars I will go to my folks and take it up, and I will go to my folks with my recommendation."

On being asked whether he would have settled on that basis, he responded:

"I don't know whether I would or not. What I was trying to do was to get Judge Truly to offer it. . . . If my clients had wanted to accept, I would have been satisfied in a way. In other words, I would not have stood between them and any settlement they wanted to make."

Mr. Wall, who was originally employed and who had a contract to receive fifty per cent. of whatever amount was recovered, stated that he thinks he would have accepted Mr. Cassidy's recommendation, stating:

"I rather think that I would have yielded my personal opinion in the matter to him and my client as I regard him as a good lawyer."

Mr. Higdon, the administrator, while testifying that he never did authorize anybody to settle the case, also put it beyond dispute that no agent of the fidelity company ever approached him with reference to a settlement or indicated to him any desire to compromise the case. He furthermore testified that he would have been willing to take the advice of Mr. Cassidy and Mr. Wall and would have done so in making any compromise. In the only response which the appellee or its attorneys were ever able to extract from the fidelity company or its counsel, no objection whatever was made to the form of the offer or the capacity of the parties to conclude the settlement.

The fidelity company intimated nothing about the minority of Mrs. Winslow, or about the necessity of securing a decree of the chancery court. They made no effort whatever to compromise. On the contrary, they stated without equivocation that they were "unwilling to make this offer." Manifestly, then, the fidelity company "failed to take advantage of such opportunity for settlement," and breached this express provision of the contract. Clause D was designed to make the insurer active in compromising litigation and in co-operating with the railway company in effecting speedy and satisfactory settlements. My brethren not only reverse the decree of the trial court, but enter a judgment here in favor of the fidelity company, and in doing so reward the inaction of the insurer in cases of this kind. The result reached by the majority necessarily places a premium upon appellant's wrong and sanctions fraudulent neglect. In construing clause D the manifest purpose of the indemnity contract should be kept in mind. The contract places the burden upon the fidelity company "at its own cost to investigate all accidents and defend all suits, even if groundless," and expressly provides that:

"The company is not responsible for settlements made or any expense incurred by the assured, unless such settlements or expenditures are first specifically authorized in writing by the company."

In other words, the contract forbids the assured from compromising litigation or incurring any expense other than necessary medical or surgical assistance for immediate relief. The company then attempted to tie the hands of the assured in making settlements and at the same time refused itself to settle. I am not willing to concede that the assured could not have settled the case and then recovered from the assurer the amount properly expended in effecting a settlement, in no case to exceed the amount of the policy. This point is not involved in the present litigation. The contract on its face attempts to prohibit the assured from making a settlement, and

the fidelity company is in no position to complain at the action of the railroad company in refusing to settle the case and thereby doing the very thing which the contract says that it must do.   Certain it is that, under the express provisions of clause D, if the fidelity company fails to settle within the limits of five thousand dollars pending litigation, it expressly agrees to pay any judgment not in excess of ten thousand dollars.   In this case it knowingly and voluntarily assumed the risk of litigation and, having thus assumed the risk, should now bear the burden.   It was the business of appellant not only to entertain a compromise offer, but to seek an offer of compromise.   The only question in this case is whether insurance really insures.

Stress is laid in the majority opinion upon the latter part of clause D, stating that the opportunity of compromise must be submitted to the company "by the injured employee or his duly authorized representative."   The proposition of settlement in this case originated with the widow, the chief beneficiary.   Whatever Mr. Higdon did in this case was in the interest of the widow and her small infant.   It is an afterthought on the part of appellant to base its defense now upon the incapacity of the parties to compromise.   It must be conceded that a decree of the chancery court would have been necessary, but this was a formality easy to be complied with.   The case was finally compromised after the rendition of the verdict of twenty-five thousand dollars and the prosecution of an appeal to the supreme court. Appellant was at last a party to a compromise settlement, and a decree of the chancery court was obtained.   Appellant is now in no position to say that this decree authorizing a settlement could not have been obtained before trial.   Its absolute refusal to entertain any kind of offer effectually closed the door to any settlement and prevented any party in interest from seeking permission of the chancery court to settle.   It ill becomes appellant now to harp on what it could not have done or might not have done when

it did not even try to do. It is estopped to make any such defense.

This court has uniformily construed insurance policies "most strongly against the insurance company, and most favorably for the assured., *Life Ins. Co.* v. *Bould-in,* 100 Miss. 660, 56, So. 613. "The language of the policy, being chosen by the insurer, it should be construed, if practicable, so as to cover the subject-matter intended to be covered. . . . The contract of indemnity will be supported, if possible." *Shivers* v. *Farmers' Mut. Ins. Co.,* 99 Miss. 744, 55 So. 965; *Boyd* v. *Ins. Co.,* 75 Miss. 50, 21 So. 708. In the case of *Employers' Liability Co.* v. *Light Co.,* 28 Ind. App. 437, 63 N. E. 56, it is stated:

"A well-defined distinction exists between two classes of conditions found in insurance policies. Those which operate upon the parties prior to the loss are regarded as matters of substance, upon which the liability of the insurer depends, and are to receive a fair construction according to the intention of the parties, while, as to those prescribing formal requisites by which the previously vested right is made available, a rigid construction is not allowed. *Solomon* v. *Ins. Co.,* 160 N. Y. 595, 55 N. E. 279, 46 L. R. A. 682, 73 Am. St. Rep. 707."

If this rule of construction is forced in the present case, the conditions "prior to the loss," those "matters of substance," expressly provided that, if appellant "has the opportunity to settle the claim" for five thousand dollars "and fails to take advantage of such opportunity for settlement," it shall be liable for ten thousand dollars. Under this rule of construction, the phrase "fails to take advantage of" is most significant. It made it the business of appellant to look after the details of the settlement and itself to secure any decree of the settlement and itself to secure any decree of the chancery court that might properly have been secured and to do this at its own cost. Instead of seeing to it that the duly authorized representative of the deceased

obtained a decree of the chancery court to settle, it
refused to settle at all. In doing so it came within the
principle frequently announced by this and other courts
that a fire insurance company by denying liability un-
der a policy waives proof of loss and other formal
requirements. It may be legitimately inferred from
the testimony that the all-controlling motive of the
appellant was, as stated by its general counsel, to "get
out of these cases as cheaply as possible." There is
further intimation in the record that the financial
affairs of the appellant Great Southern Accident & Fi-
delity Company were in bad condition and that the
company had determined to liquidate.

In the case of *Casualty Co.* v. *Telephone Co.,* 139
Fed. 604, C. C. A. 588, involving a similar contract of
indemnity, it is stated that:

"The contract does not contain any provision in re-
spect to how or through what agency the insurance com-
pany should either defend or settle. Those were matt-
ers for its own determination. It might settle the
suit through its attorneys, or through some local or
general agent, or by some agent specially appointed.
Inasmuch as its own liability was limited, it was bound
to take care that no unnecessary liability was cast up-
on the assured by a negligent defense. So with its ob-
ligation to settle."

On the point that the insurance company cannot so
construe the contract or take any action or fail to take
any action to the prejudice of the assured, I direct at-
tention to the case of *Butter* v. *Fidelity* Co., 120 Minn.
157, 139 N. W. 355, 44 L. R. A. (N. S.) 609. In that case
there was by the insurance company "a denial of
liability and refusal to settle or defend the action."
After taking this position, the company was held to
have waived the other provision "of the contract
making a judgment after trial of the issue a condition
precedent to a recovery by the insured under the con-

tract." In *N. O., M. & C. R. Co.* v. *Casualty Co.*, 114 La. 153, 38 So. 89, 6 L. R. A. (N. S.) 567, the court approved the doctrine that "the insurer must be held to good faith and intelligent action in the premises." While the issues in the present case are different from the issue presented in the case of *St. Louis Dressed Beef & P. Co.* v. *Maryland Casualty Co.*, 201 U. S. 173, 26 Sup. Ct. 400, 50 L. Ed. 712, the conclusion I reach is within the spirit of the opinion of the court in that case. It was there said of the insurance company that, "if the defendant kept its contract, it would defend the suit and the plaintiff would have no duties." So, in the present case, if the insurance company had kept its contract it would itself have cooperated with appellee in effecting a settlement, and if it had done this it could have and would have overcome the slight obstacles in the way of concluding a legal settlement. In the case of *Brassil* v. *Maryland Casualty Co.*, 147 App. Div. 815, 133 N. Y. Supp. 187, the indemnity company, in accordance with its contract, undertook to defend the litigation. After the rendition of a judgment against the insured in excess of the amount of the indemnity contract, it was held that the insured, who appealed from the judgment and obtained a reversal, was entitled to recover the cost and expense incurred in the prosecution of the appeal to the appellate court. In that case the insurance company declined to prosecute an appeal. The court said:

"Having elected and undertaken to defend in behalf of the assured, it cannot be permitted to drop the defense when it suits its own purposes, without regard to his interests, and leave him stranded with an erroneous judgment against him for a large amount, seeking later to take advantage of the outcome of the appeal which it refused to prosecute itself."

In the case of *Fidelity & Casualty Co.* v. *Southern R. News Co.* (Ky.), 101 S. W. 900, the indemnity company denied liability and directed the insured

not to incur any costs or expenses in adjusting or settling the claim. It was held that the company could not limit its liability to the amount for which the insured might have settled the claim. Here we have the reverse of this proposition and the application of the same principle. The insurer here, under the circumstances, cannot limit its liability to the original five thousand dollars because it denied liability and refused to entertain the compromise offer.

There is a case note on indemnity insurance in 6 L. R. A. (N. S.) 562, and a discussion by the editor of the decision of the court in *Rumford Falls Paper Co.* v. *Fidelity & C. Co.*, 92 Me. 574, 43 Atl. 503. In that case the limit of the policy was one thousand, five hundred dollars. The injured employee offered to settle for one thousand dollars, but the insurance company elected to try the suit. The employee recovered a verdict of two thousand five hundred dollars, and the insurance company ought to be liable for the full amount although the limit of the policy was only one thousand five hundred dollars. Attention was there directed to a contract in which the insurer apparently reserved the arbitrary right or power to control settlements and thereby to involve the insurer "in greater loss than the forfeiture of the policy." It is to be assumed that the policy in that case did not contain the valuable provision which now appears in clause D of the policy here under review. I assume that the very purpose of clause D in this case is to prevent the very unfortunate situation that presented itself in the *Rumford Falls Paper Co. Case, supra.* Here a penalty is imposed upon the insurance company by refusing to settle and electing to litigate. In this case the insurance company no longer holds the assured "in the hollow of its hands."

For the reasons stated, I am confident in the belief that this case should be affirmed.

HOLDEN, J., concurs in this dissenting opinion.