[Civ. No. 22405. Second Dist., Div. Two. Dec. 3, 1957.]

CHARLES BROWN, Appellant, v. GUARANTEE INSUR-
ANCE COMPANY (a Corporation), Respondent.

680

S. M. Dana for Appellant.

Ned Good, Herbert L. Hirson, Theodore A. Horn, Richard Oliver, Edward I. Pollock, David Pollock, Edgar Simon, John K. Sloan, Myron L. Garon and Ellis J. Horvitz, as Amici Curiae on behalf of Appellant.

Spray, Gould & Bowers for Respondent.

FOX, Acting P. J.—Plaintiff has appealed from an order sustaining defendant's demurrer without leave to amend and from the judgment entered thereon. Plaintiff's complaint alleges the following: that he was injured by the negligent driving of one Charles M. Weisenberg (hereinafter referred to as the insured); that as a result he suffered damages in excess of $15,000; that before the accident defendant had, for a good and valuable consideration, issued and delivered to the insured a policy of public liability insurance which purported to indemnify the insured for bodily injury up to and including $5,000 (for any one person) which the insured might become liable to pay by reason of the operation of his motor vehicle; that defendant was required to act in good faith and with care in representing and protecting the insured in any claim or litigation arising from the operation of his vehicle; that plaintiff commenced an action against the insured; that the law firm which defendant hired to defend the action did not act in the best interests of the insured; that defendant did not act in the best interests of the insured and "did not exercise the good faith required of [it] by law in the handling of said claim and litigation on behalf of the assured"; that plaintiff offered to settle the litigation for $5,000; that defendant refused to make any offer of compromise before trial; that at the trial defendant made offers of settlement in the amounts of $3,000, $3,500, and $4,000, but at no time would pay the policy limit; that defendant "throughout maintained that unless [it] could save some money on the settlement, [it] had no reason to settle"; that this attitude was in complete disregard of the insured's rights and best interests; that throughout the handling of the litigation the insured "was not notified of the status of any

settlement, [and] was not advised regarding protecting his own rights and interest in this matter''; that plaintiff recovered judgment against the insured in the sum of $15,000; that defendant thereafter paid the sum of $5,000 plus $138.50 in costs, and there remains a balance of $10,000 on the judgment which is still unsatisfied; that defendant refused to perform its obligations to the insured, and was ''negligent and acted in bad faith in refusing to accept the compromise offer of the plaintiff in view of the facts within [its] knowledge regarding the plaintiff's expenses and severity of his injuries and the fact that the liability of the assured was clear''; that by reason of defendant's negligence and bad faith and refusal to perform its obligation, the insured was damaged in the sum of $10,000; that the insured was forced to file a bankruptcy petition in the United States District Court for the Southern District of California; that the bankruptcy trustee assigned all the interest of the insured in any and all claims against defendant to the plaintiff herein.

The first question which must be determined by this court is whether or not an insured has a cause of action against the insurer for the latter's wrongful refusal to settle a claim against the former. Concomitantly this court must ascertain the character and limitations of such a cause of action. ██ It is our conclusion that when an insurer engages in compromise negotiations of a claim against the insured, it owes the insured a duty to exercise good faith, for the breach of which it is liable in damages.

At the outset it should be noted that we are dealing with the situation where the injured party offers to settle for an amount *within* the limits of the policy. ██ Beyond these limits the power of the insurer to act in behalf of the insured ceases. The conflict of interest which arises when an offer is made to settle for a sum closely approaching the policy limits is thoroughly considered in the recent case of *Radcliffe* v. *Franklin Nat. Ins. Co.*, 208 Ore. 1 [298 P.2d 1002, 1011-12] : ''If the limit is $5,000, the complaint seeks $40,000 damages, and the plaintiff offers to accept $4,000 as satisfaction, the conflict of interests between insurer and insured is apparent. In the conflict each thinks of his own weal. The insured, prompted by a desire to be free from uncertainty, may demand that the insurer settle a claim which is completely unfounded, but in policies such as the one before us, the insurer limits its promise to 'sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law

for damages.' When the insurer rejects a compromise offer of $4,500 under a policy of $5,000 in a case in which $50,000 damages are sought, it thrusts virtually all of the risk upon the insured. In the hope of saving $4,500, the insurer forces the insured to incur a hazard of $45,000. The observation just made is not intended as criticism of insurers. The conflict of interest is bound to continue so long as policies are written for limited protection. Problems of the kind which confront us could be simplified by including in policies a provision stating what should be done in such situations. Such a policy was written and was before the court in *Georgia Life Ins. Co.* v. *Mississippi Cent. R. Co.*, 116 Miss. 114 [76 So. 646]. There the policy provided for double coverage when a compromise offer was rejected.

''In resolving problems such as the one before us, any one of several approaches to the issues may present itself. The solution may be sought in the terms of the policy itself, and the court may attempt to resort to contract law. Or the insurer may be viewed as a fiduciary, possibly as an agent, and thereupon the court will employ the principles of law which govern an agent's relationship to his principal. In such situations the law generally demands good faith. Or the courts may turn to tort law and hold that the insurer in dealing with the defense, including the matter of settlements, must exercise due care.''

Many of the cases recognizing the insured's cause of action against the insurer for wrongful refusal to settle are discussed in the Radcliffe case, *supra*. In addition there is an excellent classification of the cases on this subject in 40 American Law Reports 2d 168. The compiler of the annotation states (pp. 171-72) that ''the vast majority of the courts have held, and it is probably the accepted rule in all jurisdictions at this time, that the insurer is bound to give some consideration to the insured's interest in such a situation, and the pronounced split in the decisions involves the question whether the insurer's obligation is only to act in 'good faith' to the insured in considering such an offer, or whether it is required to exercise 'due care' and is liable for a negligent rejection of the compromise.''

As yet no appellate court in this state has passed upon the question now before this court. However, a Ninth Circuit case, *Christian* v. *Preferred Acc. Ins. Co.*, 89 F.Supp. 890, has held such an action exists in California and is based upon bad faith rather than negligence. The court stated: ''Ordi-

narily under the terms of the policy the insurer is in full charge of the litigation, to the exclusion of the insured in the preparation of the defense, negotiation for settlement and other steps in the lawsuit. Its actions affect not only its own possible liability but also the possible liability of the insured which arises if the recovery exceeds the limits of the insurance contract. This casts upon the insurer the obligation of good faith, the breach of which gives rise to a cause of action in favor of the insured for any damage thereby sustained by him.'' In reaching its decision the court relied upon a San Francisco Superior Court case, *Wong & Marr* v. *Metropolitan Cas. Ins. Co.*, decided December 7, 1948. The court quoted (p. 890) from the written opinion in the Wong & Marr case as follows: ''Since this responsibility of an insurance company is read into the relationship between the insurer and the insured, and justly so, it would appear that the obligation of the insurer should not be extended beyond the duty of exercising good faith in the conduct of the matters arising from that relationship, particularly in the absence of legislation creating a different or higher standard. If the insurer has exercised good faith in all of its dealings under its policy, and if the settlement which it has rejected has been fully and fairly considered and has been based upon an honest belief that the insurer could defeat the action or keep any possible judgment within the limits of the policy, and its judgments are based on a fair review of the evidence after reasonable diligence in ascertaining the facts, and upon sound legal advice, a court should not subject the insurer to further liability if it ultimately turns out that its judgment is a mistaken judgment. Such a responsibility could hardly be claimed to be in contemplation of the insurance relationship.''

The reasoning of the court in *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1, 12 [231 N.W. 257, 235 N.W. 413, 414-15], is particularly appropriate here: ''In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. It is generally

understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance. So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the insurer to the insured arises. It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense. It is quite apparent that this right was given to the insurance company to induce it to enter into the contract of insurance, and that it is a necessary right to be possessed by it if it is to write the insurance upon the terms stipulated. It is a right to be exercised by the insurer in its own interest.

"It is the right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But, as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

"This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. If it exhausts the sources of information open to it to ascertain the facts, it has done all that is possible to secure the knowledge upon which a good-faith judgment may be exercised. . . .

"In addition to this a further duty plainly devolves on the insurer. After it has made an investigation of the accident and the injury, and faces the probability that a recovery will exceed the indemnity, it plainly becomes the duty of the insurer to indicate such fact to the insured, to the end that he may take such steps as may be open to him for his own protection. . . . The company owes this duty to insured because it has taken over all of the rights which formerly belonged to the insured, which could be exercised by him to place him in possession of the facts suggesting the possibility or probability of a recovery beyond the limit of the indemnity. Because the contract takes away these rights from the insured and transfers them to the insurer, the insurer owes to the insured the implied duty to so exercise them as to discover the possible extent of the liability and to communicate such fact to the insured."

The court in *Southern Fire & Cas. Co.* v. *Norris,* 35 Tenn. App. 657 [250 S.W.2d 785, 790], points out: "The insurer is under no duty to compromise a claim for the sole benefit of its insured if to continue the fight offers a fair and reasonable prospect of escaping liability under its policy or of getting off for less than the policy limit. The insured surrenders to the insurer the right to investigate and compromise or contest claims knowing that, in event of a claim, the insurer will have its own interests to consider. But an insured also has a right to assume that his interests will not be abandoned merely because the insurer faces the prospect of a full loss under the policy. The relation is one of trust calling for reciprocity of action. The insured owes the duty of full co-operation—the insurer the duty of exercising good faith and diligence in protecting the interest of its insured."

The court in the Radcliffe case, *supra,* states at page 1023 [298 P.2d]: "Plainly, an automobile owner who procures a policy of limited liability insurance understands that the company is in business and that unless it looks after its own interests it cannot expect to survive. The insurer, obviously, has a right to give heed to its own interests when it considers settlement offers, but when it does so it must give at

least as much attention to those of the insured. The latter were entrusted to it for protection. When an accident occurs, followed by a claim asserted by the injured person, the common interests of the insured and the insurer are in jeopardy. Although the company, in dealing with the situation, has a right to consider its own interests, it has no right to sacrifice those of the insured. The decision made in such a situation must be an honest one, it must be made in good faith and with due consideration for the interests of the insured.''

It is apparent from the authorities above noted that the law imposes a duty upon the insurer when it undertakes to defend an action against the insured and enters negotiations for settlement. Because the relationship between the insured and the insurer under such circumstances closely approximates that of principal and agent or beneficiary and trustee, most courts have based liability upon bad faith rather than upon negligence. One reason for rejecting the negligence test was pointed out in *Noshey* v. *American Automobile Ins. Co.*, 68 F.2d 808. In reversing an order sustaining a demurrer to plaintiff's complaint, the court stated (pp. 809-810) : ''It appears to be well settled in cases of limited liability insurance that the insurer may so conduct itself as to be liable for the entire judgment recovered against the insured although the judgment exceeds the amount of liability named in the policy. Some of the cases hold that the insured is entitled to recover upon proof that the insurer in refusing to settle a claim for damages was guilty of negligence. In so far as any standard of due care may be applied to the exercise of an honest judgment in accepting or refusing an offer of compromise, the test is rejected in the better reasoned cases, and we think rightly so. The practical difficulties in applying such standard are at once suggested by the rhetorical question in the Best Building Company case, *supra* [*Best Bldg. Co.* v. *Employers' Liability Assur. Corp.*, 247 N.Y. 451 (160 N.E. 911, 71 A.L.R. 1464)], 'We may ask what would constitute negligence in the failure to settle a case, as distinguished from bad faith,' and by the laconic observation of the Kentucky Court in *Georgia Casualty Company* v. *Mann*, 242 Ky. 447 [46 S.W.2d 777, 779], 'The gift of prophecy has never been bestowed on ordinary mortals.' Nor within the policy limits has the insurer any contract obligation to effect settlement, as the policy contains no promise that it will do so under any and all conditions or circumstances, and none is to be implied, and beyond the

policy limits the insurer has of course no authority to bind the assured by compromise in any amount whatsoever. The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement.'' In rejecting the negligence test, the court in the Best Building Company case, *supra* (cited in the Noshey case), stated (160 N.E. at 912): ''Even where there was little likelihood of recovery, many reasonable persons would think it wise to settle rather than to take any chance with a jury. In most of the accident cases, disputed questions of fact arise. Is the insurance company to determine at its peril whether reasonable-minded men would believe the plaintiff's witnesses in preference to its own? Again, even on conceded facts, as frequently happens, a serious question of law arises as to the nature or extent of liability, if any. Is a jury to say that the insurance company was guilty of negligence in choosing to try out such a question in the courts rather than to settle?''

Another reason for rejecting the negligence test becomes apparent when we consider the fact that the insurance policy limits the insurer's liability. The parties expressly agree that the insurer will indemnify the insured only up to a certain amount. It is a harsh measure to hold the insurer liable for amounts often far in excess of the agreed limit. To justify such a result requires substantial culpability on the part of the insurer—bad faith rather than mere negligence. An action for wrongful refusal to settle is to be distinguished from one for wrongful failure to defend the action against the insured, where mere negligence is held sufficient to justify recovery. (See annot., 131 A.L.R. 1499, 1510.) The insurer's duty to defend any action against the insured is clearly expressed in the insurance policy, whereas the policy provision concerning settlement by the insurer is usually permissive in form.[1] The mandatory duty to defend justifies the implication of a requirement that the insurer exercise ordinary care in conducting such defense.

Although recent cases have indicated a coalescence of the bad faith and negligence tests (the opinion in the Radcliffe case is an example of this), we are convinced that

[1]The typical liability insurance policy provides that the insurer shall ''defend any suit against the insured . . . even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient. . . .'' (See Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv.L.Rev. 1136, 1137.)

only bad faith should be the basis of the insured's cause of action. Bad faith may involve negligence, or negligence may be indicative of bad faith, but negligence alone is insufficient to render the insurer liable. ▮ Whether or not the insurer is guilty of bad faith is, of course, a question for the trier of fact in each case. (*Radcliffe* v. *Franklin Nat. Ins. Co., supra,* p. 1024 [298 P.2d] ; *Southern Fire & Cas. Co.* v. *Norris, supra,* p. 791 [250 S.W.2d] ; see annot., 40 A.L.R.2d 168.) In resolving the question of settlement the insurer must take into account, and give fair and objective consideration to, the insured's interests. ▮ In deciding whether the insurer's refusal to settle constitutes a breach of its duty to exercise good faith, the following factors should be considered: the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer.

▮ The complaint in the case at bar alleges that the insurer did not act in good faith when it refused to accept the injured claimant's offer to settle, that it insisted it had no reason to settle unless it could thereby save some money, that it did not notify the insured of any offer of settlement, and that the insured was therefore damaged to the extent that the judgment against him exceeded the policy limit. Although the complaint contains several conclusions of law, it does state facts sufficient to constitute a cause of action *in favor of the insured.* Under the facts alleged a jury could have found that defendant breached its duty to exercise good faith when it refused to settle for $5,000. (See *Lanferman* v. *Maryland Cas. Co.,* 222 Wis. 406 [267 N.W. 300].)

▮ Defendant argues that payment by the insured of the amount of the judgment in excess of the policy limit is a prerequisite to his cause of action for wrongful refusal to settle. It is true that some courts have held that payment by the insured is a condition precedent to his cause of action against the insurer. (*State Automobile Mut. Ins. Co.* v.

*York,* 104 F.2d 730, cert. denied, 308 U.S. 591 [60 S.Ct. 120, 84 L.Ed. 495]; *Dumas* v. *Hartford Acc. & Indemnity Co.,* 92 N.H. 140 [25 A.2d 361]; *Universal Automobile Ins. Co.* v. *Culberson,* 126 Tex. 282 [86 S.W.2d 727, 87 S.W.2d 475].) However, logic and reason support the contrary view that the insured's cause of action arises when he incurs a binding judgment in excess of the policy limit. ■ An insurance company may not take advantage of the limited financial ability of its insured in order to escape its obligations. (*Arenson* v. *National Automobile & Cas. Co.,* 48 Cal.2d 528, 539 [310 P.2d 961].) In holding that finality of judgment only is required before the insured may recover for the insurer's wrongful refusal to settle, the court in *Southern Fire & Cas. Co.* v. *Norris, supra,* stated (p. 791 [250 S.W. 2d]) : ''These latter cases [holding that the action arises when the insured suffers judgment against him], it seems to us, are supported by the sounder reasoning. The contrary view, while logical in the abstract, only serves as a windfall to an insurer fortunate enough to have insured an insolvent. The insurer in such a case stands in the position of having been derelict in the performance of its duty under a policy for which it accepted a premium paid by the insured in good faith. The liability, though ex delicto, as we have seen, arises out of the contract. If the insured had not felt the need of the protection offered by the policy and the services of the Company in handling claims against him it is to be assumed he would not have taken the policy. The claim is now an adjudged liability which he can escape only by a discharge in bankruptcy or by payment. If he chooses the former course his credit is impaired. If he does not the outstanding judgment against him is likely to prove an insurmountable barrier to payment. If prepayment is required in cases of this kind the insurer is likely to be less responsive to its trust duties in cases where the insured is insolvent than in cases where the insured is able to discharge any judgment in excess of the policy limit which may be rendered against him.'' The same result was reached in *Wessing* v. *American Indemnity Co.,* 127 F.Supp. 775. The court in that case stated (p. 781) : ''I believe the conclusion of the latter cases [holding that the action arises when the insured suffers judgment against him] is right, certainly in the light of the general law in Missouri. I believe this not only because of the reasoning in those cases, but also because of the following: It has always been the law in Missouri, that in an action for damages

for a bodily injury, the plaintiff, who has been required, as a result of the injury, to *incur* medical, medicine, nursing and hospital expense, is entitled to have that element of his damage submitted to the jury though there be no evidence of payment. . . . I think the analogy between that element of damage in a bodily injury suit, on the one hand, and the element of damage to the plaintiffs here, through suffering or 'incurring' this judgment, on the other hand, is so close as to be indistinguishable and, I think, too, that payment is no more a condition precedent to suit for recovery of the damage in the one case than in the other.

"Moreover, the judgment which plaintiffs claim they were caused to suffer, or to incur, by the 'bad faith' of defendant, survives for 10 years from its rendition and is subject to being kept alive . . . whereas, the tort, here alleged to have been committed by defendant against the plaintiffs, became complete upon the finality of the judgment against them, and . . . they must sue on that tort within [the statutory period of limitation] or the action will be barred."

██ The analogy drawn by the court in the Wessing case, *supra,* applies equally in California since it has long been established in our state that a plaintiff may recover for medical expenses which he has incurred but not yet paid. (*Nelson* v. *Kellogg,* 162 Cal. 621, 623 [123 P. 1115, Ann.Cas. 1913D 759].)

The early case of *Schwartz* v. *Norwich Union Indemnity Co.,* 212 Wis. 593 [250 N.W. 446], also holds that the insured's cause of action arises when his liability is fixed by a judgment against him. The court reasoned as follows (p. 446): "One who has been subjected to a judgment by reason of fraud practiced upon him by another standing in the relation of insurer is entitled to relief even though he has not paid the judgment. A cause of action in his favor arises and his damage occurs when the liability becomes thus fixed. Neither the right of action nor the measure of damages depends upon the fact of payment. It is enough if by reason of the appellant insurer's fraud the respondent must submit to a liability to pay and the precise sum which he is liable to pay is known, or ascertainable, for then there is no difficulty in fixing the amount of damages. Liabilities resulting from tortious acts are included in damages when they become certain. . . . The judgment constitutes a legal injury to the judgment debtor regardless of failure of payment previous to the action."

Applying the foregoing principles to the case at bar, it is clear that any cause of action which the insured may have had for the defendant's wrongful refusal to settle arose when he suffered the $15,000 judgment. Indeed the complaint alleges that the insured was forced to go into bankruptcy because of this judgment. Therefore, the facts alleged in the complaint sufficiently stated a cause of action in favor of the insured when he filed his bankruptcy petition.

The next question which this court must determine is whether the insured's cause of action against defendant passed to the trustee in bankruptcy and from the trustee to the plaintiff herein. Defendant contends that the cause of action for an insurer's wrongful refusal to settle sounds in tort rather than contract, and as such it does not pass to the trustee in bankruptcy and is not assignable by the trustee. It would be fruitless for us to attempt to determine at this point whether the insured's claim against defendant is a cause of action in tort or in contract. Undoubtedly a provision in an insurance contract could be so worded that the insurer's wrongful refusal to settle would constitute a breach of the contract. But the insurance contract in the instant case is not before the court and we could merely surmise what is provided therein. Moreover, the crucial question is not whether the action is tort or contract, but whether it is the type that will pass to the trustee in bankruptcy and will be assignable by him to others. Therefore, we will assume that the action sounds in tort and determine the issue accordingly. Included in the property which passes to the trustee in bankruptcy are the bankrupt's "rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded or sequestered: *Provided,* That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process. . . ." (11 U.S.C.A. § 110(a) (5).) No court has ever determined whether the cause of action here involved passes to the trustee in bankruptcy. However, it has been held that an insured's cause of action against the insurer for false representations passed to the trustee in bankruptcy. (*Connolly* v. *National Surety Co.,* 35 Ohio App. 76 [171 N.E. 870].) And there is

a close similarity between a cause of action for deceit and one for wrongful refusal to settle—they both deal with wrongs which grow out of the relationship created by the contract between the parties, and they both relate more to the injured party's property than to his person. The cases cited by defendant on this issue, such as *Fidelity Union Cas. Co.* v. *Hanson,* (Tex.Com.App.) 44 S.W.2d 985, 987, cert. denied, 287 U.S. 599 [53 S.Ct. 12, 77 L.Ed. 522], are not in point since they involve claims against the insurer for personal injuries and the statute expressly excludes them. The cause of action sued upon herein is not similar to any of the torts expressly excluded from passing to the trustee by the statute. According to the statute the right of action passes to the trustee if the bankrupt "could by any means have transferred" it. This requires us to turn to state law and ascertain the transferability of the cause of action thereunder. (*In re Landis,* 41 F.2d 700, 702, cert. denied, 282 U.S. 872 [51 S.Ct. 77, 75 L.Ed. 770] ; *Mutual Life Ins. Co.* v. *Menin,* 115 F.2d 975, 977; *In re Mittlemann,* 43 F.Supp. 146, 148, aff'd, 123 F.2d 703; *Cobleigh* v. *State Land Office Board,* 305 Mich. 434 [9 N.W.2d 665, 666].) Thus, the question of whether the claim passed to the trustee and the validity of the trustee's assignment to plaintiff are both dependent upon a determination of California law.

Civil Code, section 954, provides in part: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." Under this section it is clear that the insured's cause of action is assignable if it is based upon contract. However, it is nevertheless assignable even if based upon tort. In *Wikstrom* v. *Yolo Fliers Club,* 206 Cal. 461 [274 P. 959], the court held that a cause of action to recover damages for fraud in the sale of land was assignable. The court quoted (p. 463) the following from Street's Foundations of Legal Liability: "As regards particular results, it is pretty generally held in America that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable. In conformity with the principle just

stated the following demands, claims, and rights of action have been held to be assignable: causes of action arising from the breach of a contract of any kind (except the breach of a promise to marry); causes of action arising from torts which affect the estate rather than the person of the individual who is injured. Under the latter head are claims arising from the carrying away or conversion, of personal property, from the fraudulent misapplication of funds by the officer of a bank, from negligent or intentional injury done to personal property or upon real estate. In view of the general tendency to recognize the transferability of rights of action growing out of injuries done in respect of one's property or estate, it is somewhat curious to note that it is commonly held that the right of action for fraud and deceit is not assignable. But where *property* is obtained by deceit or fraudulent device of any sort, the cause of action is assignable, for here the injury is done in respect of the particular property which is wrongfully acquired.'' The court then states (pp. 463-64): ''Under this doctrine, without reference to a statute, it has been held that a cause of action *ex delicto* for injuries to personal or real property is assignable. [Citations.] . . . 'The position is that the right of action for a tort is not the subject of assignment; and this we understand to be the general rule (citing cases). But the rule applies only to those torts which are merely personal, and which, on the death of the person wronged, die with him; while torts for taking and converting personal property, or for injury to one's estate, and generally, all such rights of action for tort as would survive to the personal representatives, may, it seems, be assigned so as to pass an interest to the assignee which he can enforce by suit at law (citing cases).'

''In fact, in California, without reference to the statutory enactments, this court, in *Rued* v. *Cooper,* 109 Cal. 682, 693 [34 P. 98], approved language as follows, based upon a consideration of the English and American cases then in existence: 'Assignability of things in action is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage.' We have no doubt that under the above general doctrine alone, the cause of action in question must be held assignable and to have survived. [Citation.]

"But, supplementing said general doctrine, it must be said that sections 953 and 954 of the Civil Code have lifted many of the restrictions imposed by the rule of the common law upon this subject. There can be little doubt that the cause of action set forth in the complaint here is a 'thing in action' under said section 953, and arises 'out of the violation of a right of property,' under said section 954, and is expressly made assignable and declared to survive the death of the owner by the latter statute. That these statutes were intended to liberalize the common-law rule was expressly held in *Morris* v. *Standard Oil Co.*, 200 Cal. 210, 214 [252 P. 605]." (See also *Webb* v. *Pillsbury*, 23 Cal.2d 324, 327-328 [144 P.2d 1, 150 A.L.R. 504] ; *American Trust Co.* v. *California Western States Life Ins. Co.*, 15 Cal.2d 42, 67 [98 P.2d 497].)

Applying these principles to the instant case, the inescapable conclusion is that the insured's cause of action is assignable even if it does arise out of a tort. The action in no way resembles the wrongs of a purely personal nature (e.g., slander, assault, negligent personal injuries) which are held not to be assignable. The cases cited by defendant are therefore not in point. On the other hand, the action does resemble strikingly wrongs relating to property (e.g., conversion, deceit). The analogy between this action and one for deceit is close. In the latter case the defendant fraudulently obtains one's money or property; in the former the insurer's bad faith causes the insured to suffer a judgment, indirectly depriving him of money or property. It is of no consequence that in the former case the defendant does not directly benefit by the wrong; the action is based upon the detriment to the insured, not the benefit to the insurer. Moreover, as previously noted, in both situations the wrong grows out of the relation created by the contract between the parties. In addition it should be noticed that the very basis of the insured's cause of action is the damage that he is forced to suffer because of the insurer's wrongful act. The act strikes the insured in his pocketbook and diminishes his estate (*cf. Jackson* v. *Deauville Holding Co.*, 219 Cal. 498, 500-501 [27 P.2d 643]) ; it does not harm his person or his personality. If the act is a tort, it is a tort affecting the insured's property and is not personal to him. The modern trend in favor of assignability dispels any remaining doubts concerning the transferability of the insured's claim.

We have thus determined that the insured's cause of action for wrongful refusal to settle could validly pass to

the trustee in bankruptcy and be assigned by him to others. Therefore, the complaint states facts sufficient to constitute a cause of action by plaintiff (as successor in interest of the insured) against defendant. This result may seem anomalous in that the plaintiff, who previously offered to settle his claim for $5,000, has now acquired the right to maintain against defendant insurer an action which arose by reason of that offer to settle. But it must be borne in mind that plaintiff merely stands in the shoes of the insured; it is the insured who has allegedly suffered the wrong at the hands of the insurer. It might be said that the result reached herein will cause more injured claimants to propose settlement for the policy limit when the insurance company is defending the action against an insured who is apparently judgment-proof. Yet the insurer has nothing to fear so long as its refusal to settle is made in good faith. ▇▇▇ And it is fundamental that the law favors settlements. (*Potter* v. *Pacific Coast Lbr. Co.*, 37 Cal.2d 592, 602 [234 P.2d 16]; *Estate of Green*, 138 Cal.App.2d 211, 215 [292 P.2d 651].)

Since the demurrer was sustained without leave to amend, it is apparent that the ruling of the trial court was based primarily on the general demurrer. It is obvious that the trial court would not have sustained the special demurrers alone without leave to amend. This finds support in the concession by counsel for defendant on oral argument that in the event this court held that a cause of action in favor of plaintiff was stated, plaintiff should be permitted to amend his complaint in order to improve the statement of his cause of action. Since the record does not specifically indicate the trial court's disposition of the special demurrers, we must assume that they, too, were sustained. Even if they were sustained, leave to amend should have been given since the complaint does state facts sufficient to constitute a cause of action.

The judgment is reversed with directions to allow plaintiff to file an amended complaint within 20 days after remittitur is entered. The purported appeal from the order sustaining the demurrer is dismissed since such an order is not appealable. (Code Civ. Proc., § 963; *Lavine* v. *Jessup*, 48 Cal.2d 611, 614 [311 P.2d 8].)

Ashburn, J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied January 2, 1958.

---

*Assigned by Chairman of Judicial Council.