MURRAY *v*. METROPOLITAN LIFE INS. CO.*

(Division A.   Dec. 13, 1926.)

[110 So. 660.   No. 25878.]

1. INSURANCE. *Insurer's liability under master policy becomes fixed at time of injury to employee, and may be enforced after termination of employment.*

   Liability of insurer of employees under master policy, providing for termination on employee's discontinuance in active employment, becomes fixed at time of injury to employee, and may be enforced after termination of employment.

2. INSURANCE. *Provisions of master policy and of individual certificates issued to employees should be construed together.*

   Provisions of master policy insuring employees and those of individual certificates issued to employees should be construed together.

3. INSURANCE. *Provision should not be construed in favor of ininsurer unless clearly required by policy.*

   Provision of policy should not be construed in favor of insurer unless clearly required by language of policy.

4. INSURANCE. *Demurrer held properly overruled to replication of waiver of proofs of disability filed to plea alleging failure to furnish proofs.*

> Where replication to special plea averring insured's failure to furnish proofs of disability pleaded waiver of proofs thereof, demurrer thereto was properly overruled.

*Corpus Juris-Cyc. References: Industrial Insurance, 31CJ, p. 967, n. 11 New, 29 New; p. 974, n. 3 New.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Suit by William C. Murray against the Metropolitan Life Insurance Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

*Mayson & Kelly,* for appellant.

The declaration is predicated solely upon that provision in the policy providing for disability benefits. It is provided in other places in the policy that if employment ceases and the assured employee so desires, he can have a life policy only issued to him, payable at his death to his beneficiaries. It is also provided in what is denominated the "Master Policy" by provisions, however, under which the appellant would not be bound, that when an employee ceased to work, the lumber company would report it and his insurance would cease and a register of such transactions would be kept, and this provision is the basis of the first special plea.

The second special plea is predicated on a provision in the "Master Policy," as it is called, that it would report persons ceasing to be in its employ on the fourteenth day of the preceding calendar month, and that on the first of April, 1925, which was four or five months after appellant became permanently disabled, the J. J. Newman Lumber Company reported to the appellee that the appellant was not in its employ and, hence, at the time of filing this suit, the terms of the policy did not cover the appellee.

The. fourth special plea is exactly the same as the former except that it was styled ''Register'' and avers that, according to the register kept, the appellant was not in the employ of the Newman Lumber Company on the first day of April, 1925, and that the insurance was discontinued at that time.

The sixth special plea averred that pursuant to the terms of the policy the certificate of insurance would issue and in the certificate it was to be provided that in case of the termination of employment with the employer from any cause whatever, the assured would be entitled to have issued to him without further evidence of insurability the life policy, but not term insurance, that employment with the Newman Lumber Company on the part of the appellee ceased about April 1, 1925, and that insurance automatically discontinued and terminated.

The appellee filed a demurrer to the several special pleas and with reference to special plea number one, it averred that it was without application to appellee's declaration for the reason that the register provision had no application or connection with the provision of the policy providing for disability benefits, and had application only to employees who had not been permanently disabled but who voluntarily retired or were discharged from the employment without receiving such injury.

To special plea number two it averred that said special plea was utterly without application to the suit in question and that the provision in the policy headed: ''Insurance To Be Discontinued'' was altogether disassociated from and had no connection with that part of the policy upon which the suit was brought.

With reference to special plea number six, it averred that said plea was not well made because it was predicated on that provision of the policy styled ''Register'' and was disconnected from and had no application to the provision of the policy upon which the suit was brought. Further, because the appellant was injured permanently

and disabled while in the employ of the J. J. Newman Company and while the policy was in full force and effect, that provision referred to in said plea was intended to apply only to employees voluntarily retiring from the service.

To special plea number five, it averred that the plea was not well taken because the provision styled "Certificate of Insurance" had no connection whatever with the policy upon which the action was brought, the provision providing for disability benefits, and because the provision of the policy applied to those who left the service uninjured and expected to maintain the policy by keeping the annual or quarterly premiums paid.

The defendant's third special plea sought to evade liability because appellant never furnished the defendant due proof or proofs of any kind to the effect that he was totally or permanently disabled and that after April 1, 1925, he ceased to have any sort of insurance. To this plea appellant presented a replication in which he averred that he was not required to furnish proof of disability prior to April 1, 1925, (there is no time limit in the policy providing when proof of disability shall be furnished, the limitation in the policy is to the effect that six months after proof of disablement the first payment will be made) but that on August 14, 1925, he requested the appellee to provide him with blanks to make due proof of permanent disability and that the appellee refused to do so.

*No provision in the policy for forfeiture.* Unless there is a provision in the policy providing for a forfeiture, there can be none until notice is served on the assured that unless he complies with the conditions imposed in the terms of the policy, the same will be forfeited. Parker's Ins. Law; *Friend* v. *So. States. Life Ins. Co.,* L. R. A. 1917B 208.

Denial of liability obviates the necessity of furnishing proof. One of the pleas alleged that proof was not furnished in time and another that the suit was premature-

ly brought on that account. Other pleas denied liability under the policy, there being a denial of liability it was not necessary to furnish proof of disability. *Atlantic Horse Ins. Co. v. Nero,* 108 Miss. 321, 66 So. 780; *Cranford v. Mass. Protective Ass'n,* 137 Miss. 876, 102 So. 171. Any disavowal by an insurance company of its liability waives proof of loss. 77 A. S. R. 432.

*After a claim is preferred, negotiations and calling for proof estops the insurer from claiming a forfeiture.* Affidavits showed permanent disability. These affidavits were put in the record by the appellee itself. The insurance company is estopped to insist on a forfeiture by requiring a furnishing of proofs at some trouble or expense. 25 Cyc., page 872.

If the company requires the assured by virtue of the contract to do some act or incur come expense or trouble inconsistent with the claim, then the contract would become inoperative in consequence of a breach of some of the conditions, the claim is waived. *Da Rin v. Casualty Co. of America,* 137 A. S. R. 729; 29 Cyc. 193 and 198.

*Defendant's plea not applicable to the provision of the policy sued on.* After liability actually attaches under the policy, the relation between the parties is changed from that of insurer and insured to that of debtor and creditor. 2 Elliott on Contracts, section 1581; *Ill. Bankers Ass'n v. Byassee,* 41 A. L. R. 381, 275 S. W. 519.

In the case at bar appellant's claim had ripened long before he ceased to be an employee, April 1, 1925. His injury became permanent in December, 1924, while he was an employee of the lumber company and while his policy was in full force and effect.

The case ought to be reversed and judgment entered in this court for the appellant.

*Wells, Stevens & Jones,* for appellee.

Counsel for appellant in their brief seem to understand or interpret the master policy to provide for tem-

porary total disability, but such is a misconception of the terms thereof. The master policy insures against death and against total and permanent disability but not against total and temporary disability.

Under said provisions manifestly only an employee insured under the master policy could make proof of such total and permanent disability. When the employee ceased active employment with the company and was, on notice from the lumber company, dropped from the protection of the insurance by the Metropolitan such employee thereafter could submit no proof of total and permanent disability. The statement on the back of page 1 of the certificate in no wise misleads such employee for it expressly states *"any employee insured under this plan . . ."* who has become permanently disabled *"will be regarded as a claimant* by the Metropolitan Life Insurance Company."

In April, 1925, the J. J. Newman Lumber Company reported to the Metropolitan Life that insurance was to be discontinued on certain employees who had terminated their services and among others whose employment was terminated as of April 1, 1925, was given the name of William C. Murray, Serial No. 126.

Up to that date no proof of any kind or character had been submitted to the Metropolitan of any disability, total and permanent, or any other kind. In the agreed statement of facts, it was agreed that the first and only proof of disability received by the Metropolitan Life Insurance Company was received on February 27, 1926. The demurrer of the plaintiff admitted that no proof prior to April 1, 1925, was furnished to the Metropolitan Life.

So, admittedly, by the pleadings in this case, although plaintiff claimed to have been totally and permanently disabled from injury on November 7, 1923, he worked from November 14, 1923, until December 4, 1924, when he ceased to work for the J. J. Newman Lumber Company in any way, shape or form, and his insurance was

terminated upon the Newman Company's notifying the
Metropolitan Life that he had ceased to be in their em-
ployment on April 1, 1925, and the Metropolitan Life
canceled the insurance covering the plaintiff, William
C. Murray, in April, 1925, and Murray did not within
thirty-one days from that date take out for himself, as
he had a right to do, an individual policy and maintain
all the rights which he has as against the Metropolitan
Life Insurance Company.

I. *The contract of the parties and the status of Wil-
liam C. Murray.* It will be seen from the policy provi-
sions read in connection with all of the terms and pro-
visions of the entire contract that the J. J. Newman
Lumber Company, the employer of a large number of
employees of various kinds, classes, ages and conditions,
applied for a collective or group policy of insurance for
the benefit of all its employees under the conditions and
limitations stated in the application and the policy con-
tract, and the Metropolitan Life agreed to write and
did execute the group insurance upon the condition
precedent: first, that the J. J. Newman Lumber Com-
pany was the employer and any beneficiary of the policy
should be an employee; and, second, upon termination
of active employment, or in other words upon the rela-
tion of employer and employee ceasing, the insurance
as to any discontinued employee should automatically
and immediately terminate and the Metropolitan should
thereupon be relieved of any liability of any and every
kind whatsoever except as to the privilege of applying
for an individual policy. The insurance here was a
gift on the part of the Newman Lumber Company to its
employees.

Upon termination of the active employment, the insur-
ance *"automatically and immediately terminates,"* a-
the company is released from any further liability *"of
any kind on account of such person unless an individual
policy is issued in accordance with the above provision."*

We call attention here and emphasize that the policy contract provides that in case of the termination of the employment "for any cause whatsoever" the company shall issue this individual policy without further evidence of insurability.

Unless, therefore, William C. Murray took out a policy of his own within thirty-one days, as provided in the policy contract, he waived or lost all his rights whatsoever. He cannot complain that the gift made to him by the Newman Lumber Company should be conditioned upon his remaining an employee and that an insurance representing a gratuity did not cover him in his alleged total disability after he ceased active employment or give to him any rights whatsoever except and upon condition that he avail himself of the option to take out an individual policy to keep alive his insurance. The contract to this effect could certainly be entered into by the Newman Lumber Company and the Metropolitan Life, with such limitations as the parties saw fit to insert in the contract. Certainly, no public policy forbade.

Under the limited coverage the plaintiff had from November 7, 1923, the date of his alleged injury, or from November 14, 1923, when he started to work again, or from December 24, 1924, when he quit work, up until April 1, 1925, in which to propound a claim.

The Newman Lumber Company had no right to take out insurance under a group policy for one who was not an employee, and, therefore, when the employment terminated, the individual employee was given the right to preserve his insurance intact. But this right carried with it the corresponding burden or duty of paying a premium. The employee claims all rights without assuming any burdens whatsoever.

There are no conflicts between the terms of the certificate issued to the plaintiff as Serial No. 126 and the terms of the master policy delivered to the Newman Lumber Company. The certificate given the individual employee was never intended to embody all the terms

of the contract. The very few decisions brought to our attention have held that the provisions of the master policy control. *Gallagher* v. *Simmons Hdw. Co.* (Mo.), 258 S. W. 16; *Wheeler* v. *Monsanto Chemical Works,* 263 S. W. 881.

The register kept by the Metropolitan showing the names of those employees insured under the master policy and constituting a part of the contract shows that the insurance was canceled in April, 1925, and thereupon the insurance under the policy terminated as to William C. Murray and the company was relieved of any further liability of any kind. In the language of the policy contract, ''the insurance under this policy automatically and immediately terminates and the company shall be released from any further liability of any kind on account of such person.''

Learned counsel argue that inasmuch as the declaration charges that the plaintiff was totally and permanently disabled while an employee and inasmuch as the policy contract provides that upon proof of such condition, premiums as to such disabled employee shall be waived, that the rights of the employee matured and are vested. We call attention, however, to the fact that the contract provides ''on receipt by the company at its home office of due proof that any employee insured hereunder has become wholly and permanently disabled, etc.''

Neither the Newman Lumber Company nor the employee has a right to sever the relationship of employer and employee before any claim is made and then long after notice that the employment has been terminated present a claim in the nature of an *ex post facto* claim for total and permanent disability. The contract does not so provide, and the contract of the parties is the whole law of the case. It should be enforced as written.

For the discussion of the proper rules governing the construction of insurance contracts, see these authorities: *Miss. Mut. Ins. Co.* v. *Ingram,* 34 Miss. 215; *Co-Operative Life Ins. Co.* v. *Leflore,* 53 Miss. 1; *Boyd* v.

*Miss. Home Ins. Co.,* 75 Miss. 47; *Am. Life & Accident Co.* v. *Nirdlinger,* 113 Miss. 74; *Continental Casualty Co.* v. *Hall,* 118 Miss. 871, 80 So. 335; *32 C. J.* 1158; *Guarantee Co. of North America* v. *Mechanics Savings Bank,* 183 U. S. 402, 46 L. Ed. 253; *Maryland Casualty Co.* v. *Bank of England,* 2 (2nd) Fed. 793; *Lambkin* v. *Heard,* 102 So. 565; *Hiatt* v. *Travelers Ins. Co.* (Ia.), 33 A. L. R. 655; *Fire Insurance Co. of New York City* v. *Fitzpatrick* (C. C. A., M. J.), 2 Fed. (2nd) 651; *Interstate Businessmen's Ass'n* v. *Lewis* (Iowa), 257 Fed. 241; *Aetna Ins. Co.* v. *Sacramento,* C. C. A. (Cal.), 273 Fed. 55; *Am. Cent. Life Ins. Co.* v. *Am. Trust Co.,* C. C. A. (Tenn.), 5 Fed. (2nd) 71.

Applying the foregoing authorities to the facts admitted by the special pleas, the result is that the insurance of Murray under the policy automatically and immediately terminated and appellee was released from any further liability of any kind on his account. Neither any statute of this state nor any provision of the master policy provided for any notice of any kind or character to the employee Murray. *Chrosniak* v. *Metropolitan Life,* 201 N. Y. S. 211.

*Mayson & Kelly* and *E. O. Sykes,* in reply, for appellant.

The important point here is that Murray was injured and became permanently disabled as a result of this injury while the relationship of employer and employee between the lumber company and Murray existed.

The insurance policy in this case combines really two general classes of insurance, the one being the life insurance, and the other the accident and health insurance. To this extent it is a divisible policy. As we read it, there are certain provisions with reference to life insurance and certain other separable provisions relating to health and accident.

For a discussion of divisible policies, see *Scottish Union & Nat'l Ins. Co.* v. *Warren Gee Lumber Co. et al.,* 118 Miss. 740, especially the authorities referred to at 750. We think it perfectly plain and unambiguous that when an employee insured under this policy becomes wholly and permanently disabled while in the employ of the lumber company, then he becomes entitled to these benefits. This is exactly what happened in this case.

There is absolutely nothing in this certificate, as we read, it which in any wise attempts to say that the proof of loss must also be made during the life of the policy. It is familiar law to the court that if there be any ambiguity whatsoever in the policy, it must be liberally construed in favor of the insured, and strictly construed against the insurance company.

Turning now to the clauses in the master policy relied upon by the appellee and pleaded by it, we think their contention may be boiled down to this one question; namely, that when this appellant ceased to work for the Newman Lumber Company in April, 1925, and his insurance was terminated by the lumber company, then because he did not within thirty-one days apply for and take out a life insurance policy, his right to make claim for a permanent disability ceased and terminated and thereafter the insurance company owed him nothing.

Construing the pertinent clause of the policy along with its other clauses, the court will bear in mind that the individual policy an employee can take out is merely a life insurance policy. This is shown by section 6 of the master policy.

Upon the termination of the relationship, the company is only relieved from further liability of this kind. The plain ordinary meaning of further liability is, a liability to be incurred in the future as opposed to a past liability. This clause refers to future insurance and future liability. The past insurance and the liability thereunder is to be governed by the policy at the time the liability was incurred.

The policy in question in no wise attempts to say that the proof of claim must be made during the life of the policy. Therefore, it is only necessary under this policy that the liability be incurred during its life. That an employee may recover under group insurance of this kind is shown in 31 C. J. 967, under the head of Group Insurance. We also beg to quote a part of section 148, pages 975-6. See also 14 R. C. L., section 148.

*Burkheiser* v. *Mut. Accident Ass'n,* 61 Fed. 816, 26 L. R. A. 112, is directly in point and sustains our contention that all that is necessary is for the accident to occur during the life of the policy. Other cases directly in point are: *Kerr* v. *Mut. Benefit Ass'n,* 12 A. S. R. 631, 39 Minn. 174; *Simmons* v. *Western, etc., Ins. Co.,* 210 S. W. 713; *Bankers Ass'n* v. *Byassee,* 41 A. L. R. —, 275 S. W. 519.

The insurance company in this case made no attempt whatsoever to limit the time within which proof of loss may be made, but only states that the indemnity will become due six months after this proof is made. Appellee wants to write into it that no liability will attach unless this proof of claim is made before the expiration of the policy. We submit that the clauses referred to by them are not susceptible of this construction.

There is, however, another very good reason why this cannot be done; and that is, it would violate section 3127, Code of 1906, which is a statute of limitations. *Ins. Co.* v. *Broom,* 111 Miss. 409.

The judgment of the lower court should be reversed.


Cook, J., delivered the opinion of the court.

This suit was instituted by the appellant against the Metropolitan Life Insurance Company on an insurance contract for alleged total and permanent disability. From the pleadings the following facts appear:

The J. J. Newman Lumber Company is engaged in the operation of a large sawmill located at Sumrall, Miss.,

and it employs several hundred men. On December 24, 1922, the Metropolitan Life Insurance Company issued and delivered to said lumber company a policy of group insurance covering the lives of the employees of said lumber company who were actually working for said company on that date. This group policy is called the "master" policy, and it contained a provision obligating the insurance company to deliver to the lumber company for delivery to each employee insured a certificate of insurance, this provision being as follows:

"*Certificate of Insurance.*—The company will issue to the employer for delivery to each employee insured hereunder an individual certificate showing the insurance protection to which such employee is entitled, the beneficiary to whom payable, together with a statement that in the case of the termination of the employment with the employer, for any cause whatsoever, such employee shall be entitled to have issued to him by the company, without further evidence of insurability, and upon application to the company within thirty-one days after such termination of employment and upon payment of the premium then applicable to the class of risk to which he belongs and to the form and amount of the policy at his attained age (nearest birthday) a policy of life insurance in any of the forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection under this policy at the time of termination. Upon termination of active employment, the insurance of any discontinued employee under this policy automatically and immediately terminates, and the company shall be released from any further liability of any kind on account of such person unless an individual policy is issued in accordance with the above provision. Re-employment will be classed as new employment in accordance with paragraph 4 hereof, and will be subject to the issuance of a new certificate."

In compliance with this provision, on the same date that the master policy was issued, there was delivered to

each of the employees of the lumber company the required certificate of insurance.    There was delivered to the appellant, William C. Murray, certificate serial No. 126, which recited:

"That under and subject to the terms and conditions of group policy No. 1666—G William C. Murray, an employee of the J. J. Newman Lumber Company, herein called the employer, is hereby insured for one thousand two hundred fifty dollars."

Printed on this certificate was a letter from the said lumber company to its employees stating, among other things, that all premiums on the insurance were paid by the said lumber company.    This policy also provided that the amount of insurance on the life of each employee should be determined by the length of service of such employee, in accordance with a schedule therein fixed, and that the amount of this insurance should be automatically increased from a minimum of five hundred dollars for those employed for six months, but less than one year, to a maximum of two thousand dollars for those employed for nine years, but less than ten years. The certificate issued to this appellee was for the sum of one thousand two hundred fifty dollars which indicates employment for three years, but less than four years, at the date of the issuance of the policy.

The names of the employees covered by the master policy were not set forth on the face thereof, but were contained in what was called a register kept in the home office of the insurance company, the provision of the policy in respect to this register being as follows:

"*Register.*—A register shall be kept by the company at its home office and shall show the names of the employees insured hereunder and the amount of insurance on each of such employees.    Copy of said register at the date of this policy is supplied herewith and made part hereof, and copies of entries in said register subsequent to said date will be furnished by the company to the employer and will become a part thereof."

By the terms of the master policy, it was made the duty of the lumber company to report to the insurance company in writing as promptly as practicable after the 14th day of each month the names of all persons ceasing to be in its employ since the 14th day of the preceding calendar month and upon whom insurance under said master policy was to be discontinued, this provision being as follows:

"*Insurance to be Discontinued.*—The employer agrees to report to the company in writing, as promptly as practicable after the 14th .day of each month, the names of all persons ceasing to be in its employment since the 14th day of the preceding calendar month and upon whom insurance hereunder is to be discontinued, together with the date when each person left said employment and the insurance hereunder was discontinued. The unearned premium returnable on account of discontinuance of insurance on any employee shall be one-half the average monthly premium payable for such employee for the particular month during which the employment of such employee was discontinued."

The master policy contained a provision for disability benefits which is in the following language:

"*Total and Permanent Disability.*—On receipt by the company at its home office of due proof that any employee insured hereunder has become wholly and permanently disabled by accidental injury or disease, before attaining the age of sixty years, so that he is and will be permanently, continuously and wholly prevented thereby .from performing any work for compensation or profit, the company will waive the payment of each premium applicable to the insurance on the life of such disabled employee that may become payable thereafter under this policy during such disability, and, in addition to such waiver, will pay to such employee during such disability, in full settlement of all obligations hereunder pertaining to such employee, and in lieu of the payment of insurance as herein provided, such monthly or yearly

installments as may be selected by such employee by written notice to the company at its home office on the following basis, to-wit (here follow optionable installment settlements allowable), in the first installment to be paid six months after receipt of due proof of total and permanent disability. If the employee dies during the period of total permanent disability, any installments remaining unpaid shall be payable as they become due to the beneficiary nominated by such employee, and such beneficiary shall have the right to commute such remaining payments into one sum on the basis of interest compounded at the rate of three and one-half per centum per annum. This provision is granted without additional cost to the employer."

The individual certificate of insurance which was issued to the appellee contained a similar provision for disability benefits, this provision of this certificate being as follows:

"*Disability Benefits.*—An employee insured under this plan who shall become wholly and permanently disabled while in our employ before reaching the age of sixty either by accidental injury or disease, and is thereby permanently, continuously and wholly prevented from pursuing any and all gainful occupation, will be regarded as a claimant by the Metropolitan Life Insurance Company. Six months after the receipt of due proof of such disablement, the insurance company will begin making payments of the amount of insurance under any one of the following plans at the option of the person insured," (here follow optionable installment settlements allowable).

"In the event of the death of the insured during the period of total permanent disability, any installments remaining unpaid shall be payable to the designated beneficiary."

From the pleadings it further appears that on the 7th day of November, 1923, while in the employ of the said lumber company, the appellant was accidentally injured;

that in December, 1924, while still in the employ of the said lumber company, and as a result of the injury received on November 7, 1923, he became wholly and permanently disabled so that he was and will be permanently prevented from pursuing any and all gainful occupation; that the appellant was continued as an employee of the J. J. Newman Lumber Company until April 1, 1925, when the said lumber company reported to the appellee insurance company that insurance was to be discontinued on certain employees whose services had been discontinued, and among others whose employment was terminated as of April 1, 1923, was given the name of the appellant, covered by insurance certificate No. 126. The declaration alleged that due and timely notice of appellant's injuries was given to both the insurance company and the lumber company, requesting them to furnish blanks to make proper proof thereof; that like notice was given to the local agent of the said insurance company, but that the appellee company had failed and refused to furnish such blanks, and had failed and refused to pay the appellant anything pursuant to the terms of the policy.

To the declaration the appellee filed a plea of the general issue, and also special pleas numbered 1, 2, 4, 5, and 8, setting up the several provisions of the policy above quoted and averring in varying language that in accordance with these several provisions the termination of appellant's active employment, with the said lumber company on April 1, 1925, automatically terminated his insurance under the policy and released the appellee from all liability to the appellant; and that since the appellant did not apply to the company within thirty-one days after the termination of his employment for an individual certificate showing the insurance protection to which he, as such employee, was entitled, or for any policy of insurance to which he would be entitled under the provisions of the policy contract, and did not offer to pay the premium for an individual policy, or apply for a policy of life insurance in any of the forms custom-

arily used by the company, any insurance had or possessed by the appellant was discontinued automatically on the termination of his employment, and all his rights thereunder were canceled and the appellee released from all further liability of any kind on account of the appellant. To these several pleas demurrers were filed and overruled.

The appellee filed a special plea, numbered 3, setting up the failure of appellant to furnish, before the termination of his employment on April 1, 1925, due proofs to the effect that he was totally and permanently disabled, and that upon the termination of said insurance on April 1, 1925, appellant thereupon ceased to have any rights whatsoever under said policy. The appellee also filed a special plea, numbered 6, averring the failure of the appellant to furnish the proofs of disability required by the policy, and that consequently the suit was prematurely brought for the reason that no installments were due under the policy until the lapse of six months after proof of disability is filed with the company. To these two pleas the appellant filed replications, and demurrers were filed to these replications. The demurrer to the replication to the third plea was sustained, while that to the replication to the sixth plea was overruled.

The appellee also filed a special plea, numbered 7, averring the termination of appellant's insurance on April 1, 1925, the failure to assert any claim under said policy or to file proofs of disability prior to April 1, 1925, and that appellant was not, as a matter of fact, totally and permanently disabled within the terms of the policy contract on or before April 1, 1925, and that by reason of the termination of said insurance on April 1, 1925, the appellant thereafter ceased to have any rights whatsoever under said policy. To this plea two replications were filed, and demurrers to each of them were sustained. Both parties thereupon declining to plead further, final judgment was entered in favor of the defendant insurance company.

The contention of the appellee, which was sustained by the rulings of the court below upon the pleadings, is that under the terms and provisions of the policy contract, upon the termination of the active employment of the insured, the insurance ''automatically and immediately terminated,'' and the insurer was released from any further liability ''of any kind on account of such person,'' unless an individual policy was issued to the insured within thirty-one days after the termination of such employment, and the premium applicable to the class of risk and the form and amount of such policy was thereafter paid by the insured, and that since no claim for total and permanent disability was made by appellant before the termination of his employment, he then had no further rights under the policy.

The appellant contends that the termination of his employment and the resulting termination of the insurance only relieved the insurer from liability for injuries and resulting disability occurring after the discontinuance of the insurance, and that it did not discharge any liability to the appellant that had become fixed during his employment and the continuance of the insurance; that there is no provision in the contract of insurance which requires the claim and proof of permanent disability to be made before the termination of his employment; and that since appellant's injury and resulting total and permanent disability occurred while he was employed by the lumber company and while the policy was in full force and effect, the liability of the insurer had become fixed and may be enforced in accordance with the terms and provisions of the policy.

We think the contention of the appellant is correct. It is true that the provisions of the master policy and ·those of the individual certificate of insurance should be construed together, but there is no conflict between them in respect to the rights of the insured to disability benefits. The provision of the master policy that, ''upon termination of active employment, the insurance of any

discontinued employee under this policy automatically and immediately terminates, and the company shall be relieved· from any further liability of any kind on account of such person unless an individual policy is issued in accordance with'' other provisions of the policy in respect thereto, releases the insurance company from liability for death or disability of the former employee occurring after the termination of active employment and the discontinuance of the insurance, but does not affect the liability of the insurer for total and permanent disability occurring while the insured is actively employed and the policy contract is in full force and effect. The contentions of appellee as they appear from the pleadings and from the brief of counsel seem to be that further liability for disability benefits would be released by the discontinuance of active employment, although a claim therefor had been made and recognized before the termination of such employment, but if we are in error in this, and the contention is simply that the rights of appellant to the disability benefits were ended by reason of the fact that the claim therefor was not made and established by due proof before the termination of his employment, we still do not think the contention is maintainable.    To so hold would largely destroy this beneficent provision which is intended to provide for those unfortunate employees or former employees who by reason of injuries resulting in total and permanent disability to engage in any gainful occupation, are rendered unable to render further service to the employer or to provide for themselves.    Total and permanent disability which will entitle the employee to benefits under the provisions of this policy will at the same time render him unable to be of further service to the employer, and will usually result in his employment being at once discontinued.    That an employee who was totally and permanently unable to render service to his employer must be continued in the service and on the pay roll of the employer to enable him to secure the disability benefits

provided in the policy, or to enable such employee to make proper proof of his disability, could hardly have been within the contemplation of the parties to the contract, and this provision should not be given this construction, so manifestly in favor of the insurer, unless the language of the policy clearly requires.

The provisions of both the master policy and the certificate of insurance giving the insured the right, within thirty-one days after the termination of his employment, to demand a policy of insurance on his life, although such a policy might make provision for disability, would be of no benefit to the insured in respect to past injuries and resulting disability, because such a policy would only cover disabilities occurring after the issuance of the policy. That the liability of the insurer for any disability occurring before the termination of employment is not affected by the failure to demand and secure the issuance of a life policy is made more manifest by the fact that, under the original policy contract, further payment of premiums after total and permanent disability was waived, while under this life policy, which was to be issued upon demand after the termination of employment, and which was to be in some one of the forms of life insurance contracts customarily written by said insurer, the premiums were required to be paid by the insured, and any right to disability benefits would be measured by the provisions of that contract, whatever they might be.

Counsel for the appellee contend that their position is supported by the case of *Wheeler* v. *Monsanto Chemical Works* (Mo. App.), 263 S. W. 881, in which it was held that under the facts of that case neither the employer nor the insurance company is liable after the employee ceases to be in the employment of the company taking out the group insurance. We fail to see any analogy between that case and the case at bar. In the *Wheeler case, supra,* the action was for the death of the insured, and it was expressly stated that the death of the

insured occurred after the termination of his employment and the discontinuance of his insurance, the court saying that:

"It may be further noted that the deceased, Ezill Lewis, was not in the employ of the defendant at the time of his death, and that the instrument sued on provides that the life of said deceased was insured during the time that he remained in the employ of the defendant, and that said insurance should cease upon the termination of said employment."

In the case at bar the total and permanent disability of the insured occurred while he was still employed by the company.

In overruling the demurrer to the replication to appellee's sixth special plea, which said replication pleaded a waiver of proofs of disability, we think the court below was correct. The error which we have herein pointed out runs throughout the court's rulings on the remaining pleadings, and upon a retrial, it may be corrected in accordance with the views herein expressed without here discussing each of these special pleas and demurrers *seriatim.*

The judgment of the court below will therefore be reversed and the cause remanded.

*Reversed and remanded.*