GEORGIA CASUALTY CO. v. COTTON MILLS PRODUCTS CO.

(Division A. Jan. 19, 1931.)

[132 So. 73. No. 29000.]

Bratton & Bratton, of Jackson, and **J. G. Holmes**, of Yazoo City, for appellant.

**Wells, Jones, Wells & Lipscomb**, of Jackson, Amicus Curiae.

Wise & Bridgforth, of Yazoo City, for appellee.

Argued orally by **J. G. Holmes**, for appellant, and by **Allen Bridgforth**, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee, the Cotton Mills Products Company, sued the appellant, the Georgia Casualty Company, in an action of trespass upon the case—an action in tort for negligence in failing and refusing to settle the claim of Oliver, an employee of the appellee, for an injury received in the course of his employment, against which accident to the employee the insurance company had issued to the employer its policy indemnifying it from loss in the limited amount stipulated therein. The case was tried in the court below on an agreed statement of facts, and judgment was entered for the plaintiff, appellee here, from which appeal is prosecuted to this court.

The Georgia Casualty Company issued its policy of indemnity to the assured—generally called an "employer's liability policy"—and the maximum amount of its liability for any injury to an employee of the assured was fixed at ten thousand dollars. The applicable parts of the policy are as follows:

First. "To indemnify the assured designated in the said schedule against loss arising or resulting from claims upon the assured for damages on account of bodily injuries, accidentally suffered or alleged to have been

suffered while this policy is in force, including death re-
sulting at any time therefrom, by any employee or em-
ployees of the assured, by reason of the operation of the
work described in the schedule, or while within or upon
the premises described in the schedule, or upon the side-
walks or other ways immediately adjacent thereto, pro-
vided such injury shall have been caused by reason of the
business operations therein or thereat conducted by the
assured as also described in said schedule."

Second. "To defend the assured and pay expenses and
costs subject to the following conditions:"

"Condition B: When any accident occurs the assured
shall give immediate written notice thereof to the com-
pany at its Home Office in Macon, Georgia, or to its duly
authorized agent. If any claim is made on account of
such accident, the assured shall give like notice thereof.
If any suit is brought to enforce such a claim, the assured
shall immediately forward to the company at its home
office in Macon, Georgia, every summons or other process
as soon as the same is served on him, and the company
shall defend such suit (whether groundless or not) in the
name and on behalf of the assured. All expenses (legal
and otherwise) incurred by the company in defending
such suit, and all court costs assessed against the assured
shall be paid by the company (whether the verdict is for
or against the assured), regardless of the limits of lia-
bility expressed in statement five of the schedule. The
assured shall always give to the company all co-operation
and assistance possible. The company shall have the
right to settle any claim or suit at its own cost at any time.

"Condition C: The assured whenever requested by the
company shall aid in securing information and evidence
and the attendance of witnesses and in effecting settle-
ments and in prosecuting appeals, but the assured shall
not voluntarily assume any liability either before or after
an accident, nor shall he (without the written consent of

the company previously given) incur any expense or settle any claim except at his own cost, nor interfere in any negotiations for settlement or in any legal proceedings conducted by the company on account of any claim; except that the assured may provide at the time of the accident (and at the cost of the company) such immediate surgical relief as is imperative.

"Condition D: No action shall be brought against the company under or by reason of this policy unless it shall be brought by and in the name of the assured for a loss, defined hereunder, after final judgment has been rendered in a suit, described hereunder, and within one year from the date of such judgment, to-wit: For loss that the assured has actually sustained by the assured's payment in money (a) of a final judgment rendered after a trial in a suit against the assured for damages; (b) of the expense (excluding any payment in settlement of a suit or judgment) incurred by the assured in the defense of a suit against the assured for damages. The company does not prejudice by this condition any defense against such action that it may be entitled to make under this policy.

"Condition M: The company's liability for indemnity as provided in the insuring agreements of this policy is limited to the amounts and as expressed in Statement 5 of the schedule. . . ."

"Statement 5 of schedule: The liability of the company for loss from an accident resulting in bodily injuries to or in the death of one person (only) is limited to ten thousand dollars. . . ."

A. L. Oliver, an employee of the assured (appellee), while the said policy was in force, suffered an injury in the loss of one eye and the impairment of vision in the other, and brought suit therefor against the assured for damages in the sum of twenty-five thousand dollars, basing his suit upon the alleged negligence of the assured.

The injury to Oliver was covered by the policy of insurance issued to the Cotton Mills Products Company by the ,Georgia Casualty Company.

The facts in the Oliver Case, upon which this cause is based, and the opinion of the court therein, are to be found in the report of the case of Cotton Mill Products Company v. Oliver, 153 Miss. 362, 121 So. 111, in which a judgment of the lower court for twelve thousand five hundred dollars in favor of Oliver was affirmed. When the verdict of the jury had been returned in the Oliver case, motion for a new trial was made, in which was stressed the amount of the verdict, alleging that it was excessive; and on appeal to the Supreme Court it was strongly insisted that there was no liability; and, also it was urged with great zeal that the verdict was excessive.

It was agreed that, after the motion for a new trial had been overruled in the lower court, Oliver, through his attorneys, offered to settle the judgment for twelve thousand five hundred dollars, proposing to accept in full therefor the sum of nine thousand dollars and court costs. The attorneys for the insurer were advised of this offer of compromise, and the insured strongly urged the acceptance of this settlement, and proposed to contribute toward the payment of said compromise the sum of five hundred dollars and accrued court costs. The attorneys for the insurer, who had represented the insured in the trial of the lawsuit, advised their client, the insurer, to accept the settlement; but also advised that they thought the verdict was excessive, and that they did not believe the Supreme Court would allow a judgment of that size to stand—and that in event the Supreme Court should order a reduction it would be reduced two thousand five hundred to five thousand dollars. There was considerable correspondence in regard to the proposed settlement; and, after being advised by the counsel who

had tried the case, the insurer reached the conclusion that the verdict in the case was unfair, and decided to await the action of the Supreme Court on appeal thereof. It thereupon rejected the offer of settlement, and directed the attorneys to proceed with the appeal.

It was agreed that in the actual defense of the suit the attorneys who conducted the defense, both in the trial court and in the Supreme Court, were diligent and skillful, and that in all respects the litigation was properly and fairly conducted. It was further agreed that the insured co-operated with the insurer, as required by the contract, and rendered such assistance as the insurer desired.

The entire record in the case of the Cotton Mill Products Company v. Oliver was made part of the record in this case; but we do not deem it necessary to set forth the facts of that case, save to say that we are convinced that the litigation was conducted in a bona fide manner, and that the whole case was one about which good lawyers would differ on the question of liability and the amount of the verdict.

In the allegations of the declaration and the agreed statement of facts, it is not hinted that the insurer was guilty of any kind of fraud or bad faith; but that in all respects, as we understand the agreement, the insurer performed its contract, paid the full amount of the policy —ten thousand dollars—all the court costs, the fees of the lawyers, the five per cent. damages allowed on appeal to the Supreme Court; but declined, on demand, to pay the amount of the principal sum of the judgment in excess of ten thousand dollars, or two thousand five hundred dollars, which the insured was compelled to pay upon the final affirmance of the judgment of the lower court by the Supreme Court.

It is contended by the insured, and was so decided by the lower court, that, notwithstanding the performance

of the contract in letter and in spirit on the part of the insurer, by reason of the latter's refusal to settle the case, and the prosecution of an appeal to the Supreme Court, it thereby violated the duty to settle, as part of its contract to defend the suit, and was guilty of negligence in the breach of this alleged duty; the insured being thereby damaged in the amount of the difference between the final judgment and the amount already paid on said judgment by the insurer—the insured having paid the entire judgment, and, in turn, having been reimbursed in the amount set forth above.

It is quite well settled, and we think is not controverted, that recovery cannot be had in an action upon this contract, where the action is brought upon the theory that the duty to settle is absolute. See Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574, 43 A. 503; Schmidt & Sons Brewing Co. v. Travelers' Ins. Co., 244 Pa. 286, 90 A. 653, 52 L. R. A. (N. S.) 126; New Orleans, etc., Co. v. Maryland Casualty Co., 114 La. 153, 38 So. 89, 6 L. R. A. (N. S.) 562; McAleenan v. Mass. Bonding & Ins. Co., 219 N. Y. 563, 114 N. E. 114; Levin v. New England Casualty Co., 233 N. Y. 631, 135 N. E. 948; Auerbach v. Maryland Casualty Co., 236 N. Y. 247, 140 N. E. 577, 28 A. L. R. 1294. But this action is not upon the contract; as has been stated, it is an action in tort for negligence, on the idea that the insurer was bound to act, and to deal in the matter of settlement of a claim arising under a contract as a reasonably prudent man might act under the same circumstances.

This question is before the court for the first time.

It is quite well settled in our jurisprudence that, where the terms of an insurance contract are ambiguous or doubtful, the contract is to be construed most favorably to the insured, and against the insurer; but it is further held that contracts of insurance, the terms of which are plain and unambiguous, are to be construed like any other

contract between the parties. Penn Mutual Life Ins. Co. v. Gordon, 104 Miss. 270, 61 So. 311; American Life, etc., v. Nirdlinger, 113 Miss. 74, 73 So. 875, 4 A. L. R. 871; Continental Casualty Co. v. Hall, 118 Miss. 871, 80 So. 335; Murray v. Metropolitan Life Ins. Co., 145 Miss. 266, 110 So. 660; New York Life Ins. Co. v. Blaylock, 144 Miss. 541, 110 So. 432; Home Ins. Co. v. Moore & Rawls, 151 Miss. 189, 117 So. 524.

It is also well settled that negligence proceeds from a failure to perform a duty owing by the negligent to the injured. Negligence can only proceed from a duty imposed by the contract, or by the statutes of the state, or by a well-defined public policy.

The contention sharply presented here is that under this contract, notwithstanding the maximum liability has been suffered and paid by the insurer, still the reservation by the insurer of the right to settle, and the exclusion of the insured from that right, creates more than an option to settle, and imposes upon the insurer the duty to settle as a reasonably prudent man would settle.

This doctrine was first announced in Cavanaugh Bros. v. General Accident Fire & Life Assur. Corp., 79 N. H. 186, 106 A. 604, and, proceeding from that case to Douglas v. United States Fid. & Guaranty Co., 81 N. H. 371, 127 A. 708, 711, 37 A. L. R. 1477, the precise rule for which appellee contends is announced—that, although it is not so stated in the contract, the obligation to use due care is ordinarily imposed by law upon all who undertake a service; and that an insurance company is liable to a person insured by it for damages due to its negligent failure to settle a claim covered by a policy by which it contracts to investigate such claim, and to make settlements in accordance with the law, and to defend suits.

In the Douglas Case, supra, the court was careful to note that, in the contract then under consideration, under

the caption of "service," the insurer agreed to investigate all accidents and settle all claims in accordance with the law; and held that the clause last quoted expressly referred, not only to the payment of judgments, but to adjustments.

This expression, quoted from the New Hampshire court, does not appear in the present contract. The court there said: "The whole question of insuring against loss may be laid out of the case, and still the defendant would be accountable for negligence. It had contracted to take charge of the defense of this claim. That contract created a relation out of which grew the duty to use care when action was taken. The insurer entered upon the conduct of the affair in question. It had and exercised authority over the matter in every respect, even to negotiating for a settlement. It is difficult to see upon what ground it could escape responsibility when its negligence resulted in damage to the party it had contracted to serve."

That court held that the relation of agency between the insured and the insurer was created by the clause referred to in that case, and, in considering that question, proceeds to speak of the mismanagement of the defense; and holds at last that the agent whose interest is adverse, as in an insurance contract, is bound to give the rights of its principal at least as much consideration as he does his own.

This case has been followed in the case of Mendota Electric Co. v. New York Indemnity Co., 169 Minn. 377, 211 N. W. 317, in which latter case the court held that there was no serious question as to the right of the injured party to recover substantial damages from the insured, announcing that: "Where the insured is clearly liable, and the insurer, after undertaking the defense of the action, refuses to make a prudent settlement unless the insured contributes a portion of the amount required,

the refusal must be made in good faith and upon reasonable grounds for the belief that an excessive amount is demanded for a settlement."

Another case called to our attention by the appellee—the latest in point of time—is Stowers Furniture Co. v. American Indemnity Co. (Tex. Com. App.) 15 S. W. (2d) 544. Here the insured had automobile insurance in the sum of five thousand dollars, and, the insurer refusing to settle for four thousand dollars, liability was fixed upon the insured at fourteen thousand dollars. The court held that the insurer who was defending the personal injury action against the insured, in determining whether the offer of settlement should be accepted, was bound to exercise that degree of care and diligence which an ordinarily prudent person would exercise in managing his own business; and reversed the Court of Civil Appeals, 295 S. W. 257, holding, in effect, that there was a duty, a breach thereof, negligence resulting therefrom, and liability therefor.

It is true that under this contract the insurer was to have the exclusive right to conduct the defense, if it were to be held liable on its contract; and, in consideration of the premium, it not only agreed to pay a maximum loss on any one employee in the sum of ten thousand dollars, but all the expense of conducting the litigation, and it is further true that the insured contracted that it, the insured, would not settle any claim at the cost of the insurer; and that the insurer was only bound to pay such sum as the insured had paid upon the final judgment of a court. On the question of settlement there is this plain language: "The company (insurer) shall have the right to settle any claim or suit at its own cost at any time."

As we view this language, taking the whole contract, and considering it together, it only means that the insurer had an option to settle if it so desired; but the time when it might do so, and the amount of its liability, was

fixed as being after a final judgment had been rendered against the insured, and the amount thereof paid by it.

The effect of the holdings of the courts we have noted is that it not only extends the contract so that the insurer becomes liable for the amount of insurance sought and paid for by the insured; but, if the insurer refuses to settle, and litigates in good faith, notwithstanding the contract, an implication of duty, and negligence flowing therefrom, is set up by these courts, because the insured has contracted to the insurer the exclusive right to conduct the defense. A contract to defend is not a contract to compromise a suit. Compromise and settlement are clearly distinguished in this contract—the language demonstrates it. There is no hint that the option to settle was to be a service to the insured, as was stressed in the Douglas case.

It is clear that there was no obligation assumed by the insurer to settle the lawsuit; so that no duty, or breach thereof, existed by virtue of the contract; neither is there any such implication. The whole contract, taken together, negatives that idea, in that the amount to be paid, on account of injury or death, to one person, is limited to ten thousand dollars. In this case the court has held the insurer liable for the excess judgment rendered by the court, less the amount which the insured offered to contribute in order to obtain a settlement.

This reasoning of the court which we have cited is tantamount, in effect, to declaring that, notwithstanding both parties to the contract have agreed that the insurer's liability shall be limited, yet, if by mistake of law or fact the insurer litigates, and there is a final judgment for more than the case could have been settled for, and in excess of the agreed limit of liability, the insurer, by reason of its want of judgment or prescience as to what will occur in the courts in future, has neglected its duty, although it has in good faith litigated and performed both the letter and the spirit of its contract.

The contract before us only reserves an option to settle on the part of the insurer, but does not impose the slightest degree of responsibility on it to settle or compromise the case, or to pay money in any other way than that set forth in plain language in the contract. Is there any public policy in this state which would set up a duty not contracted for by the party capable of contracting, and competent to make its own contract? We say not. On the other hand, we are convinced that it is the public policy of this state to protect employees from being injured or killed, and to require that employers shall not be negligent in providing the means, and a suitable place, for the performance of their duties in safety. It is the policy of this state to protect the life and limb of its citizens; and if, by procuring an insurance policy unlimited in its effect, the insured could contract, not only for its own protection, but for any liability resulting from its negligence in the first place, it would seem to be a temptation to employers of labor to fail in those precautions which humanity demands shall be exercised.

The insured had the option to buy and pay for indemnity; or, as has been done in at least one case before this court, it could have provided in its contract that the insurer should settle upon a bona fide offer of compromise. Ga. Life Ins. Co. v. Miss. Cent. R. Co., 116 Miss. 114, 76 So. 646.

It will be observed that the amount of the verdict in the instant case was in excess of the maximum amount for which the insurer was liable, and that the offer of the insured to contribute to the settlement was not in proportion to his liability under the judgment rendered in the circuit court. In all such cases, it would palpably be to the interest of the insured to favor a settlement at the expense of the insurer. It would seem to be true that, if the insurer is to be held liable in tort, it would prosecute an appeal from an adverse judgment at its

peril; because, where litigation is seriously contested, as in this case, the insurer could not foresee the final result of the lawsuit.

The insured is presumably friendly to his employees; and, if the rule extending the liability contended for here were adopted. it would be to the interest of the insured to settle all litigation, if it could be done, at the expense of the insurer.

In this there is no hint of fraud. The lawsuit was conducted in good faith; there was no arbitrary action on the part of the insured in the performance of its contract; there was no coercion; there is no public policy of the state involved, and there is no statute affecting this situation. The provision in the contract with reference to settlements is, in our opinion, a reservation in the interest of the insured, and was not included in the contract to defend the suit. We are, therefore, of the opinion that no tort arises from the faithful performance of the contract. There was no duty to settle, consequently no negligence in failing to do so; although it now appears, after the termination of the litigation, that it would have been to the interest of both the insured and the insurer to accept the proposed compromise.

Negligence cannot be predicated upon a failure to exercise an option or reservation made for the benefit of the optioner. This view is directly and affirmatively supported by the following cases: Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland, 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C, 399; Wynnewood Lbr. Co. v. Travelers' Ins. Co., 173 N. C. 269, 91 S. E. 946; Best Bldg. Co. v. Employers' Liability Assur. Corp., 247 N. Y. 451, 160 N. E. 911, and cases therein cited. We are also of opinion that all those cases which hold that there is no liability in an action on the contract, cited supra, are in point.

We therefore conclude that the appellant is not liable for damages because of negligence, having fully performed its contract in accordance with its terms.

Reversed, and judgment here for appellant.